IN RE: ALBEMARLE MENTAL HEALTH CENTER

No. 781SC996

(Filed 17 July 1979)

1. **Criminal Law '§ 82.2— privileged communications to psychologist—alleged homicide—hearing on whether to compel disclosure—jurisdiction of superior court**

   The superior court was not without jurisdiction of a special proceeding instituted by the district attorney for the court to conduct an *in camera* examination to determine whether professional employees of a mental health center obtained privileged information about an alleged homicide and whether disclosure of such information to law officers was necessary to a proper administration of justice because the proceeding was not commenced pursuant to statutory requirements for initiating a civil action as provided by G.S. 1-394; rather, the superior court obtained jurisdiction where the district attorney, acting pursuant to G.S. 8-53.3, filed a motion for an *in camera* hearing, the court promptly issued an order requiring the director and other professional employees of the mental health center to appear in court, and this notice was personally served by the sheriff.

2. **Criminal Law § 82.2— privileged communications—physician or psychologist—compelling disclosure prior to filing of charges**

   When construed together, G.S. 8-53 and G.S. 8-53.3 permit the trial court to compel disclosure of privileged information obtained by a physician or a psychologist prior to trial and prior to the filing of criminal charges when such action is necessary to the exercise of its implied or inherent powers to provide for the proper administration of justice.

APPEAL by petitioner, State of North Carolina, from *Small, Judge.* Judgment entered 20 September 1978 in Superior Court, PASQUOTANK County. Heard in the Court of Appeals 29 June 1979.

The District Attorney for the First Prosecutorial District, Thomas Watts, filed a motion in the Superior Court of Pasquotank County alleging that he had been advised by a telephone call from Charles Franklin, director of the Albemarle Mental Health Center, that professional employees of the Center had acquired knowledge and information concerning an alleged homicide. The information had been obtained by the employees from an undisclosed patient or client of the Center. The director advised Mr. Watts that he was not at liberty to disclose to him or any law enforcement agency any specific details of the information concerning the alleged homicide on the advice of counsel for the Center. Counsel had advised that such information constituted privileged communications between physician and patient pursuant to G.S. 8-53 or between a psychologist and client pursuant to G.S. 8-53.3. Mr. Watts thereafter requested in writing that Mr. Franklin provide the necessary information to him or to an assigned agent of the State Buireau of Investigation and Mr. Franklin refused in writing. District Attorney watts further alleged that:

[I]t is in the best interest of society and necessary to a proper administration of justice to quickly and thoroughly investigate all alleged acts of homicide to the end of apprehending any and all persons responsible for such acts and bringing such persons to public trial in order to determine their guilt or innocence. . . .

The District Attorney prayed that the court conduct a confidential *in camera* examination of Mr. Franklin and other employees of the Center in order for the court to determine: (1) whether any information obtained by them constituted privileged information between either physician and patient or psychologist and client; (2) whether such information was relevant to an alleged homicide or conspiracy to commit homicide, and; (3) whether disclosure of such information to law enforcement officers was necessary to a proper administration of justice. He further prayed that the court issue an order to the Center compelling disclosure of the informa-

tion if the court determined that the information was relevant to criminal acts and that its disclosure was necessary to provide for the proper administration of justice.

The trial court thereafter entered an order requiring Mr. Franklin and other employees of the Center having personal and direct knowledge of such information to appear before it for an inquiry to be conducted *in camera* and outside the presence of the District Attorney or any other law enforcement official. The order provided that counsel for the Center could be present. The order directed the Sheriff of Pasquotank County to serve a copy of the order upon Mr. Franklin and upon Mr. Lennie Hughes, attorney for the Center. The record discloses that the Sheriff served copies of the order upon Mr. Franklin and Mr. Hughes.

On 31 July 1978, Mr. Franklin, Mr. Hughes and other employees of the Center appeared before the trial court in chambers and Mr. Hughes presented a "memorandum of law." The court recessed the hearing without conducting the *in camera* inquiry requested by the State.

On 20 September 1978, the parties appeared before Judge Small to present arguments of law concerning the District Attorney's motion. The trial court had before it the District Attorney's motion and the memorandum of law filed by counsel for the Center which the court considered as a response to the State's motion. No evidence was offered other than the verified motion and copies of letters between Mr. Watts and Mr. Hughes. At the conclusion of the hearing, the trial court dismissed the action. The trial court's order contained, *inter alia*, the following (enumeration ours):

(1) No criminal proceeding has been instituted alleging that any person has committed a violation of the homicide laws of the State of North Carolina which would grant this Court jurisdiction over the subject matter.

(2) It appears to the Court that the State does not have the name of the alleged perpetrator of the crime, nor the name of an alleged victim of the crime, and does not know the date on which the alleged crime occurred, nor does it have information indicating the place where the alleged crime was committed so that venue may be established.

(3) No subpoena or other lawful process of the Court has been issued in any judicial proceeding giving the Court jurisdiction over the Albemarle Mental Health Center, its agents and employees, which enables the Court to have authority to compel disclosure of information possessed by the Albemarle Mental Health Center, and the Court is without authority in this proceeding to require the disclosure of privileged or nonprivileged information.

(4) Although the Court takes judicial notice that the State and society have a necessary interest in the investigation of all alleged homicides to the end that the person responsible may be apprehended and their guilt or innocence be judicially determined, upon the foregoing Findings of Fact the Court concludes as a matter .of law that it is without jurisdiction to proceed and to determine the merits, rights and duties of the parties.

From entry of the order dismissing the proceeding, the petitioner, State of North Carolina, appealed to this Court.

*Attorney General Edmisten, by Assistant Attorney General Donald W. Stephens, for the petitioner appellant.*

*Lennie L. Hughes for the respondent appellee.*

MITCHELL, Judge.

The sole question on appeal is whether the trial court properly concluded that it was "without jurisdiction to proceed and to determine the merits, rights and duties of the parties."

[1] The State argues, and we agree, that this cause is in the nature of a special proceeding. G.S. 1-2 provides that "An action is an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment or prevention of a public offense." G.S. 1-3 provides that "Every other remedy is a special proceeding." Moreover, G.S. 1-394 provides in part that "Special proceedings against adverse parties shall be commenced as is prescribed for civil actions." Respondent argues that the trial court here was without jurisdiction because the proceeding was not commenced pursuant to G.S. 1A-1, Rule 3 which provides that a civil action may be commenced only by the

filing of a complaint or by the issuance of a summons with permission of the court to file complaint within twenty days. Clearly, this proceeding was not commenced pursuant to our statutory requirements for initiating a civil action. We do not agree, however, with the respondent's view that our law is so inflexible as to preclude the superior court's jurisdiction in a matter of such moment as presented by the facts before us.

The superior court is the proper trial division for an extraordinary proceeding of this nature. *See* G.S. 7A-246. The judicial power of the superior court is that which is granted by the Constitution and laws of the State. *Baker v. Varser*, 239 N.C. 180, 79 S.E. 2d 757 (1954). Within the guidelines of our Constitution, the legislature is charged with the responsibility of providing the necessary procedures for the proper commencement of a matter before the courts. Occasionally, however, the proscribed procedures of a statutory scheme fail to embrace the unanticipated and extraordinary proceeding such as that disclosed by the record before us. In similar situations, it has been long held that courts have the inherent power to assume jurisdiction and issue necessary process in order to fulfill their assigned mission of administering justice efficiently and promptly. We believe that this is one of those extraordinary proceedings and that our rules of procedure should not be construed so literally as to frustrate the administration of justice.

Our legislature plainly intended that the implementation of the provisos in G.S. 8-53 and G.S. 8-53.3 be a function of the judiciary. By virtue of the failure of our legislature to provide precise statutory directions for fulfilling this responsibility, it becomes incumbent upon the courts to proceed in a manner consistent with law. The general rule is that:

> All powers, even though not judicial in their nature, which are incident to the discharge by the courts of their judicial functions, are inherent in the courts, and . . . [they have] such power as is necessary to the exercise of the judicial department as a coordinate branch of the government.

16 C.J.S. Constitutional Law § 144, p. 694 (1956). It has, for example, been held that it is an inherent power of courts to compel the attendance and testimony of witnesses. 97 C.J.S. Witnesses § 4, p. 351 (1957). Our own Supreme Court has indicated that the

absence of discovery as a matter of right does not necessarily preclude the trial judge from ordering discovery in his discretion. *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977). Federal courts have also recognized the judiciary's inherent power to compel pretrial discovery *where not specifically prohibited by statute. See United States v. Cannone*, 528 F. 2d 296 (2d Cir. 1975); *United States v. Jackson*, 508 F. 2d 1001 (7th Cir. 1975); *United States v. Richter*, 488 F. 2d 170 (9th Cir. 1973). In *Richter*, it was said that:

> "A federal court has the responsibility to supervise the administration of criminal justice in order to ensure (sic) fundamental fairness." (Citations omitted) It would be ill-advised to limit improvidently this inherent power for fear of misuse. The firing point of the legal system is with the trial judge who is best situated to administer the law and protect the rights of all. *Id.* at 173-74.

[2]  The pertinent portion of G.S. 8-53 reads as follows: "[P]rovided, that the court, either at the trial or prior thereto, or the Industrial Commission pursuant to law may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice." We think that the legislature intended to employ the phrase "may compel such disclosure" in such manner as to authorize the court to require disclosure in all situations governed by G.S. 8-53 without exception, when disclosure "is necessary to a proper administration of justice."

While the proviso contained in G.S. 8-53.3 does not contain the precise language of the proviso to G.S. 8-53 specifically providing that the required disclosure may be prior to trial, we believe that such was the legislative intent. The pertinent portion of G.S. 8-53.3 reads as follows: "Provided, that the presiding judge of a superior court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice." It would be wholly inconsistent to allow disclosure in the case of a physician-patient relationship while, in a statute extending the rule to the psychologist-client relationship, precluding the required disclosure until the time of trial. We do not assume any such inconsistency on the part of our legislature. Further, we find nothing inherent in the wording of either statute that would *prohibit* the court in the proper administration of justice from requir-

ing disclosure prior to the initiation of criminal charges or the commencement of a civil action.

The heart of a statute is the intention of the law-making body. In performing our judicial tasks, "we must avoid a construction which will operate to defeat or impair the object of the statute, if we can reasonably do so without violence to the legislative language." *Ballard v. City of Charlotte*, 235 N.C. 484, 487, 70 S.E. 2d 575, 577 (1952). In construing a statute, we must view it as giving effect to the obvious intention of the legislature as manifested in the entire act and other acts in *pari materia*. 82 C.J.S. Statutes § 381b(1), p. 885 (1953). When so construed, we find the language of both G.S. 8-53 and G.S. 8-53.3 sufficient to allow the trial court to compel disclosure prior to trial and prior to the filing of criminal charges when such action is necessary to the exercise of its implied or inherent powers to provide for the proper administration of justice.

[1] In the case at bar, the District Attorney, acting pursuant to G.S. 8-53.3, filed a motion in the superior court requesting that the court conduct an *in camera* hearing to determine whether the information in the possession of the director of the Mental Health Center and other employees was "necessary to a proper administration of justice." The court promptly issued an order requiring the director and other employees to appear in court and this notice was personally served by the Sheriff of Pasquotank County. We can think of no more effective or practical way to effectuate the intent of the proviso in question than through the employed procedure. To interpret our rules of procedure with the rigidity argued for by the respondent would do nothing more than require that we frustrate the ends of justice by an unwarranted insistence on compliance with rules which were not designed to embrace specifically the facts of a situation such as this. We think our legislature intended for the privileges provided by these statutes to be subservient to the greater cause of the proper administration of justice. Unfortunately, the legislature failed to specify the procedural steps for implementation. In such instances it becomes the responsibility of the judiciary, *in the absence of some express prohibition*, to effectuate the intent of our law by the exercise of its inherent or implied powers. The District Attorney diligently employed a practicable and workable procedure to bring the matter before the trial court. For the reasons

previously stated, the trial court improvidently dismissed the action for want of jurisdiction.

It is unnecessary to this decision for us to discuss the question of whether the information in the possession of the director of the Mental Health Center and the other employees is "necessary to a proper administration of justice" such that the shield provided by G.S. 8-53.3 should be withdrawn. Indeed, it will be the trial court's function on remand to conduct the requested *in camera* hearing and make this determination. Suffice it for us to say that we can think of no more pointed situation giving rise to implementation of the proviso in question than one in which a physician or psychologist or other affiliated personnel has information concerning an alleged homicide.

[2] We are advertent to the decisions of our Supreme Court in *Gustafson v. Gustafson*, 272 N.C. 452, 158 S.E. 2d 619 (1968); *Lockwood v. McCaskill*, 261 N.C. 754, 136 S.E. 2d 67 (1964); and *Yow v. Pittman*, 241 N.C. 69, 84 S.E. 2d 297 (1954). Those cases held that a superior court judge, prior to trial in a civil action, had no authority to compel a physician to submit to examination by opposing counsel through deposition or to submit to any pretrial examination regarding confidential communications between such physician and patient. In *Lockwood*, the Court also held that the judge referred to in the statute was the judge presiding at a trial on the merits. When these decisions were rendered, the proviso in G.S. 8-53 provided that "the presiding judge of a superior court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice." However, following the decision in *Gustafson*, our legislature, in 1969, amended G.S. 8-53 and reworded the proviso so as to indicate the clear intent of the legislature that disclosure could be compelled prior to the time of trial. 1969 N.C. Sess. Laws Ch. 914. The proviso to G.S. 8-53 was again reworded by the legislature in 1977 and again indicated that clear intent of the legislature that disclosure could be compelled prior to the time of trial. 1977 N.C. Sess. Laws Ch. 1118. While the legislature on both occasions failed to reword the proviso in G.S. 8-53.3, which was enacted in 1967, the reworded proviso in G.S. 8-53 applies to G.S. 8-53.3 as well. Although each succeeding amendment to G.S. 8-53 has left that statute more inartfully drafted than before, the intent of the legislature remains clear. The two statutes, G.S. 8-53

In re Mental Health Center

and G.S. 8-53.3, are to be read in *pari materia.* When so read, they extend the physician-patient privilege to the psychologist-client situation and withdraw the privilege *in all situations* where "necessary to a proper administration of justice." The reasons for the exceptions to the privileges granted by the two statutes are the same and it would be discordant for us to fail to extend the latter amendment of one to the other.

Finally, we commend the parties to this action for their professional approach in seeking a resolution to the questions presented. Obviously, Mr. Franklin was concerned that the information he and his colleagues received should be brought to the attention of appropriate authority. Sensitive to his professional responsibilities, however, he consulted with counsel. Mr. Hughes, on the basis of case and statutory law, issued his opinion that employees of the Health Center were not at liberty to disclose the requested information. The District Attorney, sensitive to his responsibility to enforce the criminal law in his district, filed his motion before the trial court. The trial court, with little guidance from the General Statutes and, we suspect, from an abundance of caution, dismissed the action and the matter reaches us for decision.

For the reasons stated, the decision of the trial court must be reversed and remanded. On remand, the trial court is directed to conduct the requested *in camera* hearing and make its determination as to whether the employees of the Albemarle Mental Health Center should disclose information to either the District Attorney or appropriate law enforcement authorities.

Reversed and remanded.

Judges PARKER and ERWIN concur.