IN THE MATTER OF THE INVESTIGATION INTO THE INJURY
OF SWANTEE BROOKS

No. COA00-334

(Filed 5 June 2001)

## 1. Appeal and Error— mootness—disclosure of officers' personnel files—public interest exception

Although the State has moved to dismiss an action by two law enforcement officers seeking to limit the use and dissemination of their confidential personnel files based on alleged mootness, this case is not dismissed because the public interest exception reveals a duty to consider this question when this appeal could have implications reaching beyond the law enforcement community given the fact that N.C.G.S. § 160A-168, which allows for the disclosure of confidential information, is applicable to all current and former city employees.

## 2. Police Officers— personnel files—trial court's jurisdiction to authorize disclosure

The superior court had jurisdiction and the authority to enter its 13 April 1999 orders authorizing the disclosure of information in two law enforcement officers' personnel files, because: (1) N.C.G.S. § 160A-168(c)(4) authorizes a court of competent jurisdiction to allow inspection of the officers' personnel files; and (2) this case is an extraordinary proceeding under N.C.G.S. § 1-2 in which the superior court was required to exercise its inherent or implied power for the proper administration of justice to fashion an order allowing for the disclosure of the records under N.C.G.S. § 160A-168(c)(4).

## 3. Police Officers— personnel files—ex parte order requiring disclosure improper—unsworn petitions

The superior court could not make an independent determination as to whether the interests of justice required the issuance of an ex parte order under N.C.G.S. § 160A-168(c)(4) for the disclosure of information in two law enforcement officers' personnel files and the superior court erred in failing to vacate and set aside the order in its entirety, because: (1) the district attorney's petitions were unsworn, not accompanied by any affidavits or other similar evidence, and amounted to nothing more than the district attorney's own opinion that the disclosure of the officers'

**IN RE INVESTIGATION INTO INJURY OF BROOKS**

[143 N.C. App. 601 (2001)]

files was in the best interest of the administration of justice; (2) the petitions failed to list the statutory provision authorizing the court to issue the order; and (3) there is no indication that the case was docketed as a special proceeding or any other type of proceeding in the superior court until the failure to assign a file number to the matter was brought to the superior court's attention by the officers.

Appeal by Timothy Mark Brewer and Dexter Dean Davis from orders entered 13 April and 10 August 1999 by Judge A. Leon Stanback, Jr. in Superior Court, Orange County. Heard in the Court of Appeals 25 January 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Mary D. Winstead, for the State.*

*J. Michael McGuinness for appellants.*

TIMMONS-GOODSON, Judge.

Hillsborough Police Officers Timothy Mark Brewer ("Officer Brewer") and Dexter Dean Davis ("Officer Davis") (collectively "the officers"), appeal the Superior Court's 13 April 1999 orders granting the Orange County District Attorney's petitions for release of their internal affairs and personnel files and its 10 August 1999 order vacating and modifying its original order in part. Upon review of the materials submitted on appeal and arguments of counsel, we reverse and remand.

The procedure and factual background of the present appeal is as follows: Orange County District Attorney, Carl R. Fox ("Fox"), filed *ex parte* petitions in Superior Court, seeking the release of internal affairs and personnel files for Officers Brewer and Davis. Fox's "PETITION[S] FOR RELEASE OF INTERNAL AFFAIRS AND PER-SONNEL FILES" contained factual allegations concerning an alleged assault of Swantee Brooks and a statement by Fox that the files requested were "necessary to a full and complete investigation into the injury of **Swantee Brooks**, and would be in the best interest of the administration of justice." The petitions, although signed by Fox, were not supported by affidavits, nor did they reference any legal authority allowing Fox to seek the release.

On 13 April 1999, the Superior Court granted Fox's request and ordered "the Hillsborough Police Department make available to

Special Agents of the North Carolina State Bureau of Investigation for examination and/or photocopying, the complete Internal Affairs Files and Personnel Files of [Officers Brewer and Davis]." Neither Fox's petitions nor the court's 13 April orders were initially assigned a case number.

Officers Brewer and Davis noticed an appeal to this Court on 11 May 1999; however, their notice of appeal does not appear in the record. The officers further moved the Superior Court to vacate, set aside, and stay enforcement of its 13 April 1999 orders.

Rather than setting the orders aside, the court modified them as follows:

> 1. The information disclosed to the State Bureau of Investigation (SBI) by the Town of Hillsborough and/or the Hillsborough Police Department pursuant to the Petition[s] shall be limited to that related to the scope of the investigation . . . . Otherwise, the SBI shall immediately return all documents, including copies, containing any matters unrelated to these issues to the Town of Hillsborough and/or the Hillsborough Police Department.

> 2. The SBI shall not disclose any information contained in any documents received pursuant to the Petition[s] which are unrelated to the scope of the investigation to anyone. The SBI shall not disclose any information contained in any documents related to the scope of the investigation to anyone other than the prosecutor(s) assigned to the investigation.

> 3. The SBI shall not disclose any information contained in any documents received pursuant to the Petition[s] which are related to the scope of the investigation to any Grand Jury unless and until (1) the State has petitioned the Court to present such information to the Grand Jury, (2) the Court has had an opportunity to conduct an "in camera" review of the information the State intends to present to the Grand Jury and (3) the Court has determined that the interests of justice outweigh the protected interests of [Officers Brewer and Davis].

On 16 August 1999, Officers Brewer and Davis again noticed an appeal from the 13 April 1999 orders, as well as the court's modified order entered 10 August 1999. Both officers moved the Superior Court to stay enforcement of the court's orders. Their motions were denied. The officers sought a writ of supersedeas and motion for stay

with this Court. This Court dismissed the petition for the writ but granted a temporary stay.

The State moved to dismiss the officers' appeal in Superior Court, arguing that the appeal was moot. Following a hearing, the Superior Court concluded that it lacked jurisdiction to dismiss the action as moot and therefore, denied the State's motion.

---

[1] On appeal, the State has again moved to dismiss the present action, asserting that the issues presented are moot. In support of its motion, the State cites the trial court's 10 August 1999 order limiting the use and dissemination of the officers' files. The State further presents affidavits from individuals possessing information in relation to the officers' personnel files.

In his affidavit, SBI Special Agent P.A. Emerson ("Agent Emerson") stated that he reviewed the officers' files and summarized them in a SBI report. According to Agent Emerson, the report was transmitted to three other SBI agents, Fox, and the Office of the Attorney General. Agent Emerson noted that the Attorney General's Office concluded that no criminal charges were to be brought. As such, Agent Emerson returned the officers' records to the Hillsborough Police Department and destroyed the SBI files relating to the matter in question.

Fox stated that a copy of the report was transmitted to him, that he requested that the Attorney General's Office review the investigation, and that he was never actually in possession of the report. All others in possession of the SBI report affirmed that they received a copy of the report, did not disseminate it, and destroyed all references to the officers' files.

Mootness arises when the relief sought has been granted or the original controversy between the parties is no longer at issue. *Simeon v. Hardin*, 339 N.C. 358, 370, 451 S.E.2d 858, 866 (1994). It is axiomatic that if, during the course of litigation, an action becomes moot, it should usually be dismissed. *In re Peoples*, 296 N.C. 109, 148, 250 S.E.2d 890, 912 (1978). However, our appellate courts recognize at least five exceptions to the general rule that moot cases should be dismissed. *Thomas v. N.C. Dept. of Human Resources*, 124 N.C. App. 698, 705-06, 478 S.E.2d 816, 820-21 (1996), *aff'd per curiam*, 346 N.C. 268, 486 S.E.2d 295 (1997); *see e.g., Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 286, 293, 517 S.E.2d 401, 405 (1999) (stating that court must review moot case where defendant voluntarily

ceases challenged act); *N.C. State Bar v. Randolph*, 325 N.C. 699, 701, 386 S.E.2d 185, 186 (1989) (per curiam) (concerning the public duty exception); *Crumpler v. Thornburg*, 92 N.C. App. 719, 723, 375 S.E.2d 708, 711 (1989) (discussing "capable of repetition, yet evading review" exception); *In re Hatley*, 291 N.C. 693, 694, 231 S.E.2d 633, 634 (1977) (recognizing exception where there exists "collateral legal consequences of an adverse nature"); *Simeon*, 339 N.C. at 371, 451 S.E.2d at 867 (noting appeal was reviewable where the claims of unnamed class members are not mooted by the termination of the class representative's claim).

Officers Brewer and Davis argue that at least three of the five exceptions to the mootness doctrine apply, thus mandating our review of the appeal *sub judice*. We have thoroughly reviewed the officers' arguments and find that at least one of the exceptions applies, the public interest exception.

It is well established that even if an appeal is moot, we have a duty to "consider a question that involves a matter of public interest, is of general importance, and deserves prompt resolution." *N.C. State Bar*, 325 N.C. at 701, 386 S.E.2d at 186 (citations omitted); *Leak v. High Point City Council*, 25 N.C. App. 394, 397, 213 S.E.2d 386, 388 (1975). Evidence submitted before the trial court revealed that the SBI utilizes an established practice in the disclosure of officers' personnel files. The agency first requests that the officers waive any right to confidentiality in their personnel files. If the SBI is unsuccessful in obtaining a waiver, it then seeks, through the district attorney, an *ex parte* court order authorizing disclosure.

Members of the law enforcement community assert that the procedure employed by the SBI is troublesome in that the information contained in personnel and internal affairs files "is typically highly personal information, which if disclosed, may jeopardize the financial, health and general welfare of the officer[s]." We share these concerns. This case involves the disclosure of confidential personnel files of law enforcement officers to those ultimately charged with the prosecution of crimes in this State. Also, the State claims that section 160A-168(c)(4) of our General Statutes allowed the disclosure of confidential information in the case *sub judice*. *See* N.C. Gen. Stat. § 160A-168(c)(4) (1999). Thus, given that section 160A-168 is applicable to all current and former city employees, *see* N.C. Gen. Stat. § 160A-168(a), the issues presented by this appeal could have implications reaching far beyond the law enforcement community.

Because this is the first case of its kind to reach our Court, and given the gravity of the issues presented and the far reaching implications of section 160A-168, we find that our review of the present case is in the public interest.

[2] We first address the officers' argument that the Superior Court did not have jurisdiction or the authority to enter its 13 April 1999 orders authorizing the disclosure of information in their personnel files. The State contends that the Superior Court retained the authority to grant Fox's request pursuant to North Carolina General Statutes section 160A-168. However, the officers argue that section 160A-168(c)(4) does not authorize the release of their personnel files because it provides no statutory basis "to initiate such a release of documents on an *ex parte* basis." (Emphasis added). With the officers' argument, we disagree.

Section 160A-168(c) of our General Statutes provides: "All information contained in a city employee's personnel file, other than the information made public . . . , is confidential." N.C. Gen. Stat. § 160A-168(c). "[P]ersonnel files of employees, former employees, or applicants for employment maintained by a city are subject to inspection and may be disclosed only as provided by [section 160A-168 of the North Carolina General Statutes]." N.C. Gen. Stat. § 160A-168(a). Section 160A-168(c)(4) provides: "By order of a court of competent jurisdiction, any person may examine such portion of an employee's personnel file as may be ordered by the court." N.C. Gen. Stat. § 160A-168(c)(4).

The plain language of section 160A-168(c)(4) indicates that the Superior Court, Orange County, being a court of competent jurisdiction, was indeed authorized to allow inspection of the officers' personnel files. *See State v. Green,* 348 N.C. 588, 596, 502 S.E.2d 819, 824 (1998) (finding that where statute is "clear and unambiguous, there is no room for judicial construction and the courts must give the statute its plain and definite meaning"), *cert. denied,* 525 U.S. 1111, 142 L. Ed. 2d 783 (1999). Yet, as noted by the officers, the applicable statutory provision does not provide for procedures allowing or directing the court to do so. Our appellate courts have never addressed the application of section 160A-168(c)(4). However, in *In re Mental Health Center,* 42 N.C. App. 292, 256 S.E.2d 818 (1979), our Court previously held that the Superior Court had the authority to order the disclosure of privileged communications under a similar statute, North Carolina General Statutes section 8-53.3. A summary of the issues presented by *Mental Health Center* is particularly instructive to the disposition of the present case.

In *Mental Health Center*, a district attorney ("DA") filed a verified motion with the Superior Court seeking disclosure of information concerning an alleged homicide. In his motion, the DA noted that although a mental health care facility director informed him that facility employees had obtained information relating to the alleged homicide, the director refused to provide the information because it was privileged. The DA requested that the director submit the information to an SBI agent, but the director again refused.

The DA further specified:

"[I]t is in the best interest of society and necessary to a proper administration of justice to quickly and thoroughly investigate all alleged acts of homicide to the end of apprehending any and all persons responsible for such acts and bring such persons to public trial in order to determine their guilt or innocence. . . ."

*Id.* at 293, 256 S.E.2d at 819 (alteration in original). The DA requested an *in camera* examination of the facility employees to determine (1) whether the information was privileged, (2) whether it was relevant to the alleged homicide, (3) "whether disclosure of such information to law enforcement officers was necessary to a proper administration of justice." *Id.* The DA also requested that the court compel disclosure of the information, if the court found the information necessary to the administration of justice and relevant to the alleged homicide.

The Superior Court did not conduct the requested examination but ordered facility employees to appear in court. Following a hearing, the trial court concluded that it did not have jurisdiction to order disclosure of the requested information. The State appealed, and this Court reversed the Superior Court's order.

The *Mental Health Center* Court began by concluding that the proceeding before the Superior Court was a "special proceeding." *Id.* at 295, 256 S.E.2d at 820-21 (citing N.C. Gen. Stat. § 1-3). The Court recognized that " '[s]pecial proceedings against adverse parties shall be commenced as is prescribed for civil actions.' " *Id.* at 295, 256 S.E.2d at 821 (quoting N.C. Gen. Stat. § 1-394). The Court noted that although the DA failed to follow the Rules of Civil Procedure, it was not fatal to his motion requesting disclosure. *Id.* Rather, the Court concluded that "our law is [not] so inflexible as to prescribe the superior court's jurisdiction in a matter of such moment as presented by the facts before [it]." *Id.*

The Court went on to discuss the statute which authorized the disclosure of the information requested, section 8-53.3 of the North Carolina General Statutes. *Id.* at 296-97, 256 S.E.2d at 821-22. Section 8-53.3 provided: " 'the presiding judge of a superior court may compel such disclosure, if in his opinion the same is necessary to a proper administration of justice.' " *Id.* at 297, 256 S.E.2d at 822 (quoting N.C. Gen. Stat. § 8-53.3). In examining the language of section 8-53.3, the Court found that nothing in the statute prohibited the Superior Court "in the proper administration of justice[,] from requiring disclosure prior to the initiation of criminal charges or the commencement of a civil action." *Id.* at 297-98, 256 S.E.2d at 822.

The Court duly noted:

> [T]he legislature is charged with the responsibility of providing the necessary procedures for the proper commencement of a matter before the courts. Occasionally, however, the proscribed procedures of a statutory scheme fail to embrace the unanticipated and extraordinary proceeding such as that disclosed by the record before us. In similar situations, it has been long held that courts have the inherent power to assume jurisdiction and issue necessary process in order to fulfill their assigned mission of administering justice efficiently and promptly. . . . [T]his is one of those extraordinary proceedings . . . .

*Id.* at 296, 256 S.E.2d at 821; *see also State v. Buckner*, 351 N.C. 401, 411, 527 S.E.2d 307, 313 (2000) (citation omitted) (courts employ "their inherent power when constitutional provisions, statutes, or court rules fail to supply answers to problems"). Accordingly, the Court held that "it becomes the responsibility of the judiciary, *in the absence of some express prohibition*, to effectuate the intent of our law by the exercise of its inherent or implied powers." *Mental Health Center*, 43 N.C. App. at 298, 256 S.E.2d at 822.

In the case *sub judice*, the legislature provided for the disclosure of city employees' personnel files "[b]y order of a court of competent jurisdiction." N.C. Gen. Stat. § 160A-168(c)(4). However, the legislature failed to specify the exact procedure required to obtain such an order, or whether such an order could be sought without first filing a civil or criminal action. As in the case of *Mental Health Center*, the legislature's failure to provide for the proper procedure did not negate the Superior Court's authority, granted by section 160A-168(c)(4), to order the disclosure of the confidential information. For, there is "nothing inherent in the wording of [section

160A-168] that would *prohibit* the court in the proper administration of justice from requiring disclosure prior to the initiation of criminal charges or the commencement of a civil action." *Mental Health Center*, 42 N.C. App. at 297, 256 S.E.2d at 822. As such, this is one of those "extraordinary proceedings" in which the Superior Court was required to exercise "its inherent or implied power for the proper administration of justice" and fashion an order allowing for the disclosure of the records pursuant to section 160A-168(c)(4). *Id.* at 296, 256 S.E.2d at 821.

Like the proceeding in *Mental Health Center*, the proceeding in the present case was a "special proceeding," in that it was not "[a]n action [] in an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment or prevention of a public offense." N.C. Gen. Stat. § 1-2 (1999); *see also* N.C. Gen. Stat. § 1-3 (1999) (stating that actions not defined in section 1-2 are "special proceedings"). Unlike the statute discussed in *Mental Health Center*, the statute at issue in the present appeal does not specify which division of court is authorized to issue the order allowing disclosure. However, our General Statutes mandate that the Superior Court "is the proper division, without regard to amount in controversy, for the hearing and trial of all special proceedings." N.C. Gen. Stat. § 7A-246 (1999). Although Fox did not comply with the Rules of Civil Procedure, *see* N.C. Gen. Stat. § 1-393 (1999) (stating that Rules of Civil Procedure apply to special proceedings), like the DA's actions in *Mental Health Center*, such failure was not fatal to Fox's petitions. In accordance with *Mental Health Center*, we agree with the State that section 160A-168(c)(4) authorized the trial court to issue the order authorizing the disclosure in the "special proceeding" below.

[3] We cannot agree, however, that the method utilized by Fox in obtaining the 13 April 1999 *ex parte* orders was adequate under North Carolina General Statutes section 160A-168(c)(4). Concerning the procedures utilized in *Mental Health Center*, our Court stated it could "think of no more effective or practical way to effectuate the intent of the proviso in question than through the employed procedures." *Mental Health Center*, 42 N.C. App. at 298, 256 S.E.2d at 822. The Court further found that the DA in that case "diligently employed a practicable and workable procedure to bring the matter before the trial court." *Id.*

Certainly, the methods employed by Fox in obtaining the officers' confidential information did not approach the level of procedure invoked by the DA in *Mental Health Center.* While the *Mental Health Center* Court deemed the procedures employed in that case more than "effective" and "practical," *id.* at 298, 256 S.E.2d at 822, it gave no guidance in establishing the minimum procedures required for obtaining an order pursuant to section 8-53.3 and other like statutes, such as the one at issue in the present case. However, we find that the Supreme Court's decision in *In re Superior Court Order,* 315 N.C. 378, 338 S.E.2d 307 (1986), provides some guidance in determining the proper procedures under section 160A-168(c)(4).

In *Superior Court Order,* the DA filed a petition in Superior Court seeking an order directing a bank to make a customer's bank records available to a detective. In his petition, the DA swore, under oath, that disclosure of the records " 'would be in the best interest of justice, . . . .' " *Superior Court Order,* 315 N.C. at 379, 338 S.E.2d at 309 (alteration in original). The Superior Court issued the order, as requested by the DA. Our Supreme Court reversed.

In its opinion, the Supreme Court first recognized that although no statutory authority existed authorizing or prohibiting the Superior Court's order, "such authority exist[ed] in the inherent power of the court to act when the interests of justice so require." *Id.* at 380, 338 S.E.2d at 309 (citations omitted). The Court then considered "what the State must show in order to provide a basis for the trial court to make the requisite finding to support the issuance of such an order." *Id.* The Court found:

> At a minimum the State must present to the trial judge an affidavit or similar evidence setting forth facts or circumstances sufficient to show reasonable grounds to suspect that a crime has been committed, and that the records sought are likely to bear upon the investigation of that crime. With this evidence before it, the trial court can make *an independent decision as to whether the interests of justice require the issuance of an order rather than relying solely upon the opinion of the prosecuting attorney.*

*Id.* at 381, 338 S.E.2d at 310 (emphasis added) (footnote omitted). The Supreme Court concluded that the petition presented to the Superior Court was insufficient for the trial court to make its independent determination. *Id. Compare In re Computer Technology Corp.,* 80 N.C. App. 709, 343 S.E.2d 264 (1986) (concluding that evidence presented in affidavit submitted with verified petition was sufficient

for trial court to make its independent decision that issuing *ex parte* order allowing disclosure of records was in interests of justice).

In accordance with *Mental Health Center* and *Superior Court Order*, the Superior Court must utilize its inherent power and implement and follow procedures which "effective[ly] and practical[ly] . . . effectuate the intent of [section 160A-168]," that an officer's files remain confidential. *Mental Health Center*, 42 N.C. App. at 298, 256 S.E.2d at 822. At a minimum, an *ex parte* petition submitted pursuant to section 160A-168(c)(4) should be accompanied by sworn affidavit(s) or similar evidence, including specific factual allegations detailing reasons justifying disclosure. The petition should further state the statutory grounds which allow disclosure. *See* N.C. Gen. Stat. § 1A-1, Rule 7(b)(1) (1999) ("An application to the court for an order shall be by motion which, . . . shall state the grounds therefor").

Furthermore, the Superior Court should docket petitions submitted and orders entered pursuant to section 160A-168(c)(4) per its rules for docketing "special proceedings." The Superior Court should make an independent determination that the interests of justice require disclosure of the confidential employment information. It is further within the Superior Court's inherent power and discretion to implement other procedures as may be required to effectuate the legislature's intent that the information remain somewhat confidential. The court could, for example, limit that dissemination and use of disclosed materials to certain individuals, order an *in camera* inspection, or redact certain information. *See* N.C. Gen. Stat. § 160A-168(c)(4) ("By order of a court of competent jurisdiction, any person may examine *such portion* of an employee's personnel file as may be ordered by the court").

The petitions presented to the Superior Court in the present case were simply inadequate to justify the issuance of an *ex parte* order under section 160A-168(c)(4). The petitions were unsworn, not accompanied by any affidavits or other similar evidence, and amounted to nothing more than Fox's own opinion—that the disclosure of the officers' files was "in the best interest of the administration of justice." *See Superior Court Order*, 315 N.C. at 381, 338 S.E.2d at 310 (advising that courts should not rely "solely upon the opinion of the prosecuting attorney"). The petitions further failed to list the statutory provision authorizing the court to issue the order. We also note that there is no indication that the case was docketed as a "special proceeding" or any other type of proceeding in the Superior

Court until the failure to assign a file number to the matter was brought to the Superior Court's attention by the officers. The State was questioned at oral argument concerning this oversight, but failed to assert any viable explanation.

We therefore find that the Superior Court could not make an independent determination as to whether the interests of justice require the issuance of an order under section 160A-168(c)(4). Thus, the Superior Court erred in issuing its 13 April 1999 order and failing to vacate and set aside those orders in their entirety.

Given our resolution of the aforementioned issue, our review of the officers' remaining arguments is unnecessary.

For the foregoing reasons, we reverse the Superior Court's 13 April 1999 orders and its 10 August 1999 order, modifying, but failing to set aside its original orders in their entirety, and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Judges MARTIN and THOMAS concur.