IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-446

Filed 07 February 2023

Pasquotank County, No. 21 CVS 262

IN THE MATTER OF CUSTODIAL LAW ENFORCEMENT AGENCY RECORDINGS SOUGHT BY:

APG-EAST LLC d/b/a "The Daily Advance"; Scripps Broadcast Holdings, LLC d/b/a WTKR-TV and WGNT-TV; Capital Broadcasting Company, Inc." d/b/a WRAL-TV; The McClatchy Company, LLC d/b/a "The News and Observer" and "The Charlotte Observer"; Carolina Public Press, Inc. d/b/a "Carolina Public Press"; Grey Media Group, Inc. d/b/a WBTV, WECT and WITN; WUNC, LLC d/b/a "WUNC-FM"; DTH Media Co d/b/a "The Daily Tarheel"; Nexstar Media, Inc. d/b/a "WAVY-TV and "WVBT-TV"; Cable News Network, Inc. d/b/a "CNN"; WTVD Television, LLC d/b/a WTVD-ABC11; The Associated Press; WP Company, LLC d/b/a "The Washington Post"; Charter Communications d/b/a "Spectrum News"; Chatham Media Group, LLC d/b/a "Chatham News + Record"; and Gannett Co., Inc. d/b/a "Wilmington Star News" and "USA Today", The New York Times Co. d/b/a The New York Times, Media Convergence Group, d/b/a Newsy Court TV Media, LLC d/b/a Court TV,

    Petitioners.

  Appeal by Petitioners from order entered 9 November 2021 by Judge Jerry R. Tillett in Pasquotank County Superior Court. Heard in the Court of Appeals 29 November 2022.

*Stevens Martin Vaughn & Tadych, PLLC, by Michael J. Tadych, Karen M. Rabenau, Hugh Stevens, C. Amanda Martin, and Elizabeth J. Soja, for Petitioners-Appellants.*

*No brief filed for Respondent-Appellee.*

GRIFFIN, Judge.

Petitioners, twenty media entities, appeal from Judge Tillett's order dismissing their joint motion for release of custodial law enforcement agency recordings pursuant to N.C. Gen. Stat. § 132-1.4A(g). Petitioners contend that the trial court misconstrued the law applicable to N.C. Gen. Stat. § 132-1.4A(g), and therefore erred in refusing to grant and dismissing their petition for release. Petitioners also allege Judge Tillett improperly overruled prior determinations made by another superior court judge, Judge Foster.

Our review of the relevant statutory scheme shows that our legislature intended two different procedures for individuals seeking release of custodial law enforcement recordings: an expedited petition process for certain enumerated individuals, and an ordinary civil action for all others. We hold that Judge Tillett properly dismissed Petitioners' petition for lack of standing because they failed to "file an action" as required by N.C. Gen. Stat. § 132-1.4A(g). We affirm.

## I. Factual and Procedural Background

On 21 April 2021, Andrew Brown, Jr., suffered fatal gunshots during the attempted service of arrest and search warrants on Brown at a property in Elizabeth City. On 26 April 2021, Petitioners filed the first in a series of petitions seeking release of any and all custodial law enforcement agency recordings made from the events of April 21 and protests that followed, pursuant to N.C. Gen. Stat. § 132-1.4A(g). Petitioners filed their petitions for release using the AOC-CV-270 form

issued by the North Carolina Administrative Office of the Courts ("AOC"), entitled

"Petition for Release of Custodial Law Enforcement Agency Recording."

On 27 April 2021, Petitioners filed their Second Amended Petition for Release

of Custodial Law Enforcement Agency Recording. The Second Amended Petition

included a total of twenty media entities as petitioners, which sought recordings from

the law enforcement offices in Dare, Perquimans, and Pasquotank Counties,

Elizabeth City, and the North Carolina State Bureau of Investigation. The Second

Amended Petition used the same form, noted that it was a general request for release

pursuant to N.C. Gen. Stat. § 132-1.4A(g), and requested:

> The release of all body cam, dashboard camera, cell phone,
> fixed camera recordings, or any other recordings as defined
> by [N.C. Gen. Stat. §] 132-1.4A(a)(6)* regarding this
> incident, from the time deputies first arrived at the
> residence through the protests at the scene, and later that
> evening, which are in the possession or control of the [law
> enforcement] offices or the [SBI].
>
>  . . .
>
> *including, without limitation recordings from Ring and
> other similar doorbell/security cameras to which law
> enforcement has access and/or over which the Elizabeth
> City Police Department or Elizabeth City had control.

On 28 April 2021, Judge Jeffery B. Foster held a hearing on the Second

Amended Petition in Pasquotank County Superior Court. At the time of the hearing,

there was an active investigation into the events of 21 April 2021. The Pasquotank

County district attorney advocated for the State's interest in the "orderly

administration of justice," and asked the court to postpone release of any recordings until after the district attorney's office had decided whether to bring any charges. No other interested party objected to the release of any recordings at that time.

On 17 May 2021, Judge Foster entered a written order denying Petitioners' Second Amended Petition constituting a final disposition. In the written order, Judge Foster concluded that Petitioners were "members of a general class of 'any person requesting release of a recording'" as contemplated by N.C. Gen. Stat. § 132-1.4A(g) and had "filed 'an action'" as required by the statute. Nonetheless, Judge Foster held "the release of the videos to the [Petitioners was] not appropriate at [that] time." In balancing the interest of release to the public and the media against the State's interest, Judge Foster found the State's interest weighed more heavily because "[r]elease would create a serious threat to the fair[] and orderly administration of justice" and there was a need to protect the State's "active internal or criminal investigation." There is no record of an appeal having been taken from Judge Foster's written order denying Petitioners' Second Amended Petition.

On 18 May 2021, the Pasquotank County district attorney announced that he would not bring any charges in relation to the 21 April 2021 incident. On 21 May 2021, as a result of the district attorney's decision, Petitioners filed a Third Amended and Renewed Petition (the "Third Petition") restating their request for release of the 21 April 2021 recordings by law enforcement offices in Dare, Perquimans, and Pasquotank Counties, Elizabeth City, and the North Carolina State Bureau of

Investigation. The Third Petition once again was submitted on the AOC-CV-270 petition form, noted that it was a general request for release pursuant to N.C. Gen. Stat. § 132-1.4A(g), and requested:

> On 5/18/21, the District Attorney announced he would not bring charges against the deputies. Petitioners request the release of all recordings as defined by [N.C. Gen. Stat. §]132-1.4A(a)(6)* regarding [the 21 April 2021] incident, from 8:00 a.m. on 21 April 2021 through protests at the scene, and later that evening, which are in the possession or control of the custodial law enforcement agencies identified herein.
>
> . . .
>
> *including, without limitation, recordings from Ring and other similar doorbell/security cameras to which law enforcement has access and/or over which the Elizabeth City Police Department had control or were operated on their behalf).

On 13 September 2021, Judge Tillett held a hearing on the Third Petition in Currituck County Superior Court. Judge Tillett stated during the hearing that he was unsure Petitioners had followed the "appropriate procedure" for N.C. Gen. Stat. § 132-1.4(g), even though they "had plenty of time to go file it" properly. The district attorney then moved for the first time to dismiss the Third Petition pursuant to Rule 12(b) of the North Carolina Rules of Civil Procedure. Judge Tillet heard the motion and further stated his belief that, wherever N.C. Gen. Stat. § 132-1.4A(g) is referenced, "it says may file an action," even though the section "appears to allow a broader category of person than otherwise provided for disclosure."

On 9 November 2021, Judge Tillet entered a written order dismissing Petitioners' Third Petition pursuant to Rules 12(b)(1), (b)(2), (b)(4), (b)(5), and (b)(6) of the North Carolina Rules of Civil Procedure. The written order concluded that Petitioners failed to file "an action" in compliance with N.C. Gen. Stat. § 132-1.4A(g), and thereafter had failed to serve notice upon all required parties.

Petitioners timely appeal.

## II. Analysis

Petitioners contend that Judge Tillett erred by dismissing their petition because (1) he acted based upon a misinterpretation of the controlling statutes and (2) he inappropriately overruled the prior decisions of Judge Foster.

## A. Standing to Request Release

Petitioners contend the trial court erred by dismissing their petition for release of law enforcement recordings under Rules 12(b)(1), (b)(2), (b)(4), (b)(5), and (b)(6), prior to any review of its merits. In so ruling, the court held that Petitioners had failed to file a proper action placing themselves and their claims before the court, and had further failed to comply with the service requirements of an appropriate action.

Though the trial court listed many rules in its order, the core of its decision turned on Petitioners' failure to file and serve a proper action, resulting in a lack of standing. This Court reviews the trial court's decisions regarding standing and jurisdiction *de novo*, substituting our own judgment and considering each question of law anew. *See Catawba Cnty. ex rel. Rackley v. Loggins*, 370 N.C. 83, 87, 804 S.E.2d

474, 478 (2017); *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008). Likewise, "[q]uestions of statutory interpretation are questions of law and are reviewed de novo." *In re D.S.*, 364 N.C. 184, 187, 694 S.E.2d 758, 760 (2010).

Law enforcement agencies are custodians for the recordings "captured by a body-worn camera, a dashboard camera, or any other video or audio recording device operated by or on behalf of a law enforcement agency or law enforcement agency personnel when carrying out law enforcement responsibilities." N.C. Gen. Stat. § 132-1.4A (2021). By definition, these custodial law enforcement agency recordings ("CLEARs") are neither public nor personnel recordings. N.C. Gen. Stat. § 132-1.4A(b). Law enforcement agencies are not permitted to allow viewing of CLEARs absent compliance with court orders resulting from proceedings under Section 132-1.4A. *See* N.C. Gen. Stat. § 132-1.4A(f), (g).

Section 132-1.4A defines two methods for viewing CLEARs: disclosure and release. Disclosure means "[t]o make a recording available for viewing or listening to by the person requesting disclosure, at a time and location chosen by the custodial law enforcement agency." N.C. Gen. Stat. Ann. § 132-1.4A(a)(4). Subsections 132-1.4A(b1) through (e) provide a mechanism through which certain categories of individuals who appear in or are otherwise involved in a CLEAR are presumptively authorized to receive disclosure. *See* N.C. Gen. Stat. § 132-1.4A(b1)–(e). Under "disclosure," only viewing, and not copying or dissemination, is allowed.

Release means "to provide a copy of a recording." N.C. Gen. Stat. Ann. § 132-1.4A(a)(7). Subsections 132-1.4A(f) and (g) provide instructions for those seeking "release," and for the law enforcement agencies being asked to allow release of CLEARs:

> (f) Release of Recordings to Certain Persons; Expedited Process. —
>
> Notwithstanding the provisions of subsection (g) of this section, *a person authorized to receive disclosure pursuant to subsection (c) of this section,* or the custodial law enforcement agency, may *petition* the superior court in any county where any portion of the recording was made for an order releasing the recording to a person authorized to receive disclosure. There shall be no fee for filing *the petition which shall be filed on a form approved by the Administrative Office of the Courts* and shall state the date and approximate time of the activity captured in the recording, or otherwise identify the activity with reasonable particularity sufficient to identify the recording. If the petitioner is a person authorized to receive disclosure, notice and an opportunity to be heard shall be given to the head of the custodial law enforcement agency. *Petitions* filed pursuant to this subsection shall be set down for hearing as soon as practicable and shall be accorded priority by the court.
>
>  . . .
>
> If the court determines that the person to whom release of the recording is requested is a person authorized to receive disclosure pursuant to subsection (c) of this section, the court shall consider the standards set out in subsection (g) of this section and any other standards the court deems relevant in determining whether to order the release of all or a portion of the recording. . . .
>
> (g) Release of Recordings; General; Court Order

Required.—

Recordings in the custody of a law enforcement agency shall only be released pursuant to court order. Any custodial law enforcement agency or any person requesting release of a recording may *file an action* in the superior court in any county where any portion of the recording was made for an order releasing the recording. The request for release must state the date and approximate time of the activity captured in the recording, or otherwise identify the activity with reasonable particularity sufficient to identify the recording to which the action refers. The court may conduct an in-camera review of the recording. In determining whether to order the release of all or a portion of the recording, in addition to any other standards the court deems relevant, the court shall consider the applicability of [eight enumerated] standards[.]

. . .

In any proceeding pursuant to this subsection, the following persons *shall be notified* and those persons, or their designated representative, shall be given an opportunity to be heard at any proceeding: (i) the head of the custodial law enforcement agency, (ii) any law enforcement agency personnel whose image or voice is in the recording and the head of that person's employing law enforcement agency, and (iii) the District Attorney. *Actions* brought pursuant to this subsection shall be set down for hearing as soon as practicable, and subsequent proceedings in such actions shall be accorded priority by the trial and appellate courts.

N.C. Gen. Stat. Ann. § 132-1.4A(f), (g) (emphasis added).

These two statutory subsections are similar in form and function. The differences between them lie in the language our legislature used to describe the individuals who have standing to seek release, how release was to be requested, and

who must receive notice of the release request. Subsection (f) creates an "expedited process" for release of CLEARs to specifically identified individuals presumptively authorized to receive disclosure under subsections (b1) through (e). Those specifically identified individuals seeking release under subsection (f) are directed to file a petition using a form made for this process by AOC. Notice is then to be given to the head of the law enforcement agency in custody of the CLEAR.

Subsection (g) establishes a "general" procedure for release of CLEARs to all individuals and entities other than those contemplated by subsection (f). Subsection (g) instructs anyone else seeking release to "file an action." Both subsection (f) and (g) require the release seeker to provide the date and time of the CLEAR, or other reasonably particular information identifying the requested CLEAR. However, subsection (g) does not direct nor permit the release seeker to use a form created by AOC. The general procedure outlined in subsection (g) also states that notice must be given to not only the head of the law enforcement agency in custody of the CLEAR, but also to the district attorney and to all law enforcement personnel whose images or voices appear in the CLEAR.

Judge Tillett's decision to dismiss Petitioners' petition relied on these distinctions. Judge Tillett held that Petitioners lacked standing because section 132-1.4A(g) requires the party seeking the release to file an "action," but Petitioners had filed only a petition using the AOC-CV-270 form. We must determine whether the legislature's use of the word "action" in section 132-1.4A(g) requires an individual

seeking general release of CLEARs to initiate their request by filing a civil action. We hold that it does.

"'Statutory interpretation properly begins with an examination of the plain words of the statute.'" *Belmont Ass'n, Inc. v. Farwig*, 381 N.C. 306, 310, 873 S.E.2d 486, 489 (2022) (citation omitted). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005). "Because the actual words of the legislature are the clearest manifestation of its intent, we give every word of the statute effect, presuming that the legislature carefully chose each word used." *N.C. Dep't of Correction v. N.C. Med. Bd.*, 363 N.C. 189, 201, 675 S.E.2d 641, 649 (2009) (citation omitted).

Where the meaning of words in a statute is unclear, this Court interprets the statute with a focus on giving effect to the intent of the legislature in enacting the statutory scheme:

> Legislative intent controls the meaning of a statute; and in ascertaining this intent, a court must consider the act as a whole, weighing the language of the statute, its spirit, and that which the statute seeks to accomplish. The statute's words should be given their natural and ordinary meaning unless the context requires them to be construed differently.

*Shelton v. Morehead Mem'l Hosp.*, 318 N.C. 76, 81–82, 347 S.E.2d 824, 828 (1986) (citations omitted). "This Court must consider any differences in otherwise identically worded statutes, because these differences in wording strongly suggest

that the General Assembly did not intend the words included in one statute, or subsection of a statute, to apply to other statutes or subsections that do not include those words." *State v. McCants*, 275 N.C. App. 801, 824–25, 854 S.E.2d 415, 432 (2020) (citation, quotation marks, and internal editing marks omitted).

Section 132-1.4A(g) states that anyone seeking general release of a CLEAR may "file an action." "Action" is a term of art, defined as "an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment or prevention of a public offense." N.C. Gen. Stat. § 1-2 (2021). The plain meaning and use of the term "action" means that our legislature intended for those seeking release under section 132-1.4A(g) to file an ordinary civil action, not a petition using an AOC form.

This Court has held in a similar circumstance that our legislature's use of the term "action" means that the intended result was an ordinary civil action, not any sort of special proceeding. *Charns v. Brown*, 129 N.C. App. 635, 637, 502 S.E.2d 7, 8 (1998). This Court in *Charns* interpreted our legislature's intent regarding the term "action" in the public records statute, N.C. Gen. Stat. § 132-9, but its logic is nonetheless useful here. Public records are the "property of the people" and, by default, viewable by the public without contest at minimal cost. N.C. Gen. Stat. § 132-1 (2021). The facts in *Charns* concerned actions to compel disclosure of public records after a request for disclosure of those records had been denied. *Charns*, 129

N.C. App. at 637, 502 S.E.2d at 8. The plaintiff successfully compelled access to public records. *Id.* The defendant custodian of those records appealed, arguing the plaintiff failed to comply with the procedural requirements of filing an action. *Id.* The plaintiff argued that, even though the legislature referred to actions to compel disclosure as "actions," the resulting proceedings were "special proceedings," instead. This Court held that the legislature intended an "action," and the party seeking access to the records must comply with all the statutory and procedural requirements of an "action." *Id.* at 638, 502 S.E.2d at 9.

The same conclusion is appropriate in this case. Access to public records is not ordinarily contested, but section 132-9 authorizes public record seekers to initiate an action when their request is denied. CLEARs by statute are not public records, are by default not to be released, and therefore proceedings for their release are by their very nature contested. It follows that section 132-1.4A(g) would require an action be filed to resolve a contested matter.

Interpreting section 132-1.4A as a whole leads us to the same conclusion. The legislature chose to allow specifically identified release seekers under the "expedited process" in subsection (f) to "petition," while "general" release seekers under subsection (g) are directed to "file an action." Petitioners are not the first to initiate their request for release under subsection (g) using form AOC-CV-270. The form includes a checkbox through which its user may indicate that they seek release under "G.S. 132-1.4A(g) – General."

Nonetheless, section 132-1.4A(g) makes no reference to the creation or use of a form created by AOC for actions filed pursuant to that subsection, while subsections 132-1.4A(b2) and (f) explicitly state that those seeking disclosure or release should use a form developed and/or approved by AOC. We must construe the differences between these subsections materially; if the legislature had intended an AOC form be used in conjunction with subsection (g), it would have instructed as such. *See McCants*, 275 N.C. App. at 824–25, 854 S.E.2d at 432.

We reach our conclusion in this case in full awareness of our judiciary's flexibility in resolving cases in a timely and efficient manner when those cases are initiated improperly:

> Within the guidelines of our Constitution, the legislature is charged with the responsibility of providing the necessary procedures for the proper commencement of a matter before the courts. Occasionally, however, the proscribed procedures of a statutory scheme fail to embrace the unanticipated and extraordinary proceeding such as that disclosed by the record before us. In similar situations, it has been long held that courts have the inherent power to assume jurisdiction and issue necessary process in order to fulfill their assigned mission of administering justice efficiently and promptly.

*In re Albemarle Mental Health Ctr.*, 42 N.C. App. 292, 296, 256 S.E.2d 818, 821 (1979). The Court in *Albemarle* employed this reasoning, though, in an instance where the legislature had failed "to provide precise statutory directions" for the type of proceeding required under the statute. *Id.* Here, section 132-1.4A(g) provides precise

directions that those seeking release must "file an action." We are not left to interpret whether filing a petition is sufficient for our courts to assume jurisdiction.

Petitioners failed to properly initiate judicial process under section 132-1.4A(g) by filing an AOC form. Section 132-1.4A(g) requires the party seeking release of CLEARs to "file an action" and to comply with all procedural requirements inherent therein. Judge Tillett did not err by dismissing Petitioners' petition under Rules 12(b)(1), (b)(2), (b)(4), (b)(5), and (b)(6).

## B. Overruling a Superior Court Judge

Petitioners also contend Judge Tillett's decision to dismiss their Third Amended Petition was error because he improperly overruled Judge Foster's earlier determination that Petitioners had properly, "pursuant to [subsection 132-1.4A(g),] filed 'an action'" when they used the AOC-CV-270 form to file their Second Amended Petition. Petitioners further contend that Judge Tillett erred by considering the district attorney's Rule 12(b) motion to dismiss because it was made orally at trial without prior notice to Petitioners.

Petitioners correctly state that "no appeal lies from one Superior Court judge to another; that one Superior Court judge may not correct another's errors of law; and that ordinarily one judge may not modify, overrule, or change the judgment of another Superior Court judge previously made in the same action." *Calloway v. Ford Motor Co.*, 281 N.C. 496, 501, 189 S.E.2d 484, 488 (1972). However, even if we were to find that Judge Tillett erred, the error would not be prejudicial in this case because this

Court is free to review questions of subject matter jurisdiction no matter when they arise and no appeal was taken from Judge Foster's prior dismissal. "Standing is jurisdictional in nature and consequently, standing is a threshold issue that must be addressed, and found to exist, before the merits of the case are judicially resolved." *In re S.E.P.*, 184 N.C. App. 481, 487, 646 S.E.2d 617, 621 (2007) (citation omitted and internal marks omitted). "Therefore, issues pertaining to standing may be raised for the first time on appeal, including *sua sponte* by the Court." *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878–79 (2002).

## III. Conclusion

The plain language of N.C. Gen. Stat. § 132-1.4A(g) instructs those seeking general release of CLEARs to "file an action." The Third Amended Petition filed by Petitioners failed to comply with the statutory requirements. Therefore, Judge Tillett did not err by dismissing Petitioners' petition.

AFFIRMED.

Judges TYSON and CARPENTER concur.