STATE OF NORTH CAROLINA v. TONY ALLEN HERRIN

No. COA10-1446

(Filed 21 June 2011)

**1. Appeal and Error— preservation of issues—failure to object to instruction—failure to allege plain error**

Where defendant in a prosecution for felonious malicious use of an explosive or incendiary device or material did not object at trial to the instruction that "gasoline is an incendiary material" or allege plain error, defendant failed to properly preserve the issue for appeal.

**2. Judges— outburst of laughter—ill-advised—not prejudicial**

The trial court did not commit prejudicial error in a felonious malicious use of an explosive or incendiary device or material case when the judge laughed in open court and in the presence of the jury upon hearing a witness's testimony. Although the judge's outburst may have been ill-advised, any resulting error was harmless and did not prejudice defendant so as to entitle him to a new trial.

**3. Appeal and Error— appealability—issue not ripe**

The trial court exceeded its statutory authority in a felonious malicious use of an explosive or incendiary device or material case by mandating that a later court must enter any subsequent sentence as consecutive only, rather than concurrent, if such a sentence was entered while defendant was still serving his sentence in the present case. However, because this issue was not a question ripe for review, the judgment was left undisturbed.

Appeal by defendant from judgment entered 20 May 2010 by Judge Eric L. Levinson in Gaston County Superior Court. Heard in the Court of Appeals 25 April 2011.

*Roy Cooper, Attorney General, by Barry H. Bloch, Assistant Attorney General, for the State.*

*Michael E. Casterline, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant Tony Allen Herrin appeals from a judgment entered upon a jury verdict finding him guilty of felonious malicious use of an

explosive or incendiary device or material in violation of N.C.G.S. § 14-49(a).

The evidence presented at trial tended to show that, in the early evening hours of 19 July 2009, defendant was visiting with some of the other residents in his mobile home community in Gastonia, North Carolina, when Julie Davenport rode towards the group on her child-sized bicycle. Mrs. Davenport and her husband, Daniel Davenport, lived next-door to defendant in the mobile home community, and had been defendant's neighbors since he moved into the community three years prior. According to defendant, he had a good relationship with the Davenports, and testified that, earlier that day, at Mr. Davenport's request, defendant did some brake repair work on Mr. Davenport's vehicle, and then "went halfers [sic]" with Mr. Davenport on a "crack rock."

As Mrs. Davenport peddled her small bicycle toward the gathering of neighbors, defendant approached Mrs. Davenport, grabbed the bicycle, pulled it out from under her, and began "playing tug of war with [her] bicycle." Although defendant said he and Mrs. Davenport were "just pulling, playing around," as he claimed they did every day, Mrs. Davenport suggested that defendant was not being playful and that he "was cussing all the cuss words" at her as he tugged on her bicycle. When Mr. Davenport, who was outside of his mobile home at the time, saw this interaction between his wife and defendant, Mr. Davenport "started in that direction to assist [his] wife, because [he] knew she was in trouble." The struggle between defendant and Mrs. Davenport continued and, according to Mr. Davenport, as defendant tugged on the bicycle, he "kept dragging [Mrs. Davenport] towards the creek," which ran through a ditch that was in close proximity to their homes, until Mrs. Davenport "couldn't hold [her] strength any-more and [she] had to let [the bicycle] go." When Mrs. Davenport let go of the bicycle, defendant "fell back into the creek with the bicycle on top of him, and he hit a stump on this side of his head and made his head bleed." Defendant then emerged from the creek and climbed out of the ditch. By this time, Mr. Davenport had made his way over to defendant. Mrs. Davenport then took her bicycle and returned home. Although there is conflicting testimony about the exchange that followed between defendant and Mr. Davenport, the testifying witnesses appear to agree that, at some point during the exchange, Mr. Davenport put one or both of his hands around defendant's neck and, in response, defendant punched Mr. Davenport in the jaw. Mr. Davenport then left defendant and returned home.

The Davenports testified that, shortly thereafter, they looked outside and saw defendant swinging a flatbladed shovel at a neighbor's dog and at the Davenports' cats in the yard between their home and defendant's home. Believing that defendant was trying to kill their cats, Mr. Davenport went outside and grabbed his shovel to confront defendant and Mrs. Davenport grabbed a steel or metal-tined rake and followed behind her husband. Although defendant and his witnesses testified that the Davenports were the first to arm themselves with yard tools before defendant approached them with his shovel in hand, all parties agree that, when the three met, they began "dueling with the shovels and rakes" for about ten minutes, with "shovels and rakes going everywhere."

During the course of the altercation, the three alternately wielded their gardening implements at each other "wildly," in what was described as a "full-fledged massacre." At one point, Mrs. Davenport swung the rake so that the metal tines went into [defendant's] arm and, when Mrs. Davenport "went to yank it out, [the tines] were stuck in defendant's arm, so the rake broke" and left "four big old holes" in defendant's arm, "pull[ing] the meat out of the holes." The Davenports then knocked the shovel out of defendant's hands. Shortly thereafter, Mr. Davenport said that defendant—who had been heard to say that he "would light people up" on several occasions—said he was going to "burn[] you all." Then, according to his own testimony, defendant took a few steps back to his house and grabbed a cut off aluminum Bud Lite can that was "full of gas" and also "had a little bit of two-cycle oil in it," which defendant had been using to start his car. "[B]ecause [he] knowed [sic] [he] had [gas in] there because [he] was working on [his] car there," defendant testified that he "slung that gas on [Mr. Davenport]" and "doused [Mr. Davenport] straight on in [his] face" and down his back. Then, defendant struck his lighter three times and Mr. Davenport "was, puff, on fire." A few seconds later, after defendant ignited the material he had thrown on Mr. Davenport, according to Mr. Davenport's testimony, defendant "ran like a bitch all the way, way down past his house." Mr. Davenport then jumped in the creek to put out the fire, was taken by ambulance to the hospital, and was then transferred to the Chapel Hill Burn Center, where he was treated and released two or three days later.

Defendant was indicted for maliciously injuring Mr. Davenport by using an explosive or incendiary device or material in violation of N.C.G.S. § 14-49(a). The matter was tried before a jury in Gaston County Superior Court. Defendant moved to dismiss the charge at the

**STATE v. HERRIN**

[213 N.C. App. 68 (2011)]

close of the State's evidence and at the close of all of the evidence, which the trial court denied. On 20 May 2010, the jury found defendant guilty and, on the same day, the trial court entered its judgment upon the jury's verdict and sentenced defendant to a minimum term of 133 months and a maximum term of 169 months imprisonment. In its order, the trial court included the following additional recommendation: "This sentence shall not and can not [sic] be served with any other sentence." Defendant gave timely written notice of appeal.

## I.

[1] Defendant first contends the trial court erred by instructing the jury that "gasoline is an incendiary material," because defendant asserts that he had a "constitutional right" to have the jury determine "whether the gas mixture that he threw on Daniel Davenport was an incendiary material." However, our review of the record shows that, at trial, defendant did not object to this instruction on the grounds he now advances to this Court. Instead, defendant only requested that the trial court instruct the jury that gasoline is an incendiary material *or device*, in order to adhere more closely to the language of N.C.G.S. § 14-49(a), which provides that a person is guilty of the Class D felony of malicious use of an explosive or incendiary when he or she "willfully and maliciously injures another by the use of any explosive or incendiary *device or material*." N.C. Gen. Stat. § 14-49(a) (2009) (emphasis added). We do not find that defendant challenged this portion of the trial court's instruction on the basis of the arguments advanced in his brief. Moreover, defendant does not argue that, in the absence of an objection, the trial court committed plain error by instructing the jury that "gasoline is an incendiary material." Therefore, "[s]ince defendant did not object at trial or allege plain error, he has failed to properly preserve this issue for appeal." *See State v. Scott*, 343 N.C. 313, 332, 471 S.E.2d 605, 616 (1996). Accordingly, we overrule this issue on appeal.

## II.

[2] Defendant next contends the trial court committed prejudicial error in violation of N.C.G.S. § 15A-1222 when the judge laughed in open court and in the presence of the jury upon hearing Mr. Davenport's testimony that defendant "ran like a bitch all the way, way down past his house." Although defendant failed to raise an objection to the judge's outburst at trial, "[t]he statutory prohibitions against expressions of opinion by the trial court contained in N.C.G.S.

§ 15A-1222 and N.C.G.S. § 15A-1232 are mandatory." *See State v. Young*, 324 N.C. 489, 494, 380 S.E.2d 94, 97 (1989). Thus, "[a] defendant's failure to object to alleged expressions of opinion by the trial court in violation of those statutes does not preclude his raising the issue on appeal." *Id.* Accordingly, contrary to the State's suggestion, we need not confine our review of this issue to plain error, but, after considering the merits of defendant's arguments, we conclude defendant suffered no prejudice as a result of the trial court's injudicious conduct.

"Every person charged with crime . . . is entitled to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm." *State v. Carter*, 233 N.C. 581, 583, 65 S.E.2d 9, 10 (1951). "The responsibility for enforcing this right necessarily rests upon the trial judge. He should conduct himself with the utmost caution in order that the right of the accused to a fair trial may not be nullified by any act of his." *Id.* Thus, in accordance with N.C.G.S. §§ 15A-1222 and 15A-1232, the trial judge "must abstain from conduct or language which tends to discredit or prejudice the accused or his cause with the jury." *Id.; see also State v. Herbin*, 298 N.C. 441, 446-47, 259 S.E.2d 263, 267 (1979) ("A trial judge cannot express an opinion on the evidence in the presence of the jury at any stage of the trial. [N.C.G.S. §§ 15A-1222 and 15A-1232] repealed and replaced [N.C.G.S. §] 1-180 effective 1 July 1978. The new provisions restate the substance of [N.C.G.S. §] 1-180 and the law remains essentially unchanged." (citations omitted)).

N.C.G.S. § 15A-1222 provides that "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2009). However, "[n]ot every indiscreet and improper remark by a trial judge is of such harmful effect as to require a new trial." *State v. Whitted*, 38 N.C. App. 603, 606, 248 S.E.2d 442, 444 (1978). "[I]n a criminal case[,] it is only when the jury may reasonably infer from the evidence before it that the trial judge's action intimated an opinion as to a factual issue, the defendant's guilt, the weight of the evidence[,] or a witness's credibility that prejudicial error results." *State v. Blackstock*, 314 N.C. 232, 236, 333 S.E.2d 245, 248 (1985); *see also State v. Sidbury*, 64 N.C. App. 177, 179, 306 S.E.2d 844, 845 (1983) ("[A] new trial may be awarded if the remarks go to the heart of the case."). "In evaluating whether a judge's comments cross into the realm of impermissible opinion, a totality of the circumstances test is utilized." *State v. Larrimore*, 340 N.C. 119, 155,

456 S.E.2d 789, 808 (1995). "This is so because 'a word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.' " *Carter*, 233 N.C. at 583, 65 S.E.2d at 11 (quoting *Towne v. Eisner*, 245 U.S. 418, 425, 62 L. Ed. 372, 376 (1918)). Therefore, " '[u]nless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless.' " *Larrimore*, 340 N.C. at 155, 456 S.E.2d at 808 (quoting *State v. Perry*, 231 N.C. 467, 471, 57 S.E.2d 774, 777 (1950)). Moreover, "the burden of showing prejudice [is] upon the defendant." *Blackstock*, 314 N.C. at 236, 333 S.E.2d at 248.

In the present case, defendant asserts as error the judge's "inappropriate laughter" after Mr. Davenport testified that defendant "ran like a bitch all the way, way down past his house." Defendant argues that the court's reaction "can only be viewed as a comment on the evidence being presented," and "effectively told the jury that they need not take this evidence seriously." We do not agree.

After Mr. Davenport gave the testimony to which the trial judge reacted, the prosecutor admonished Mr. Davenport for his use of profanity. The judge then stated:

> I'm sorry. I'm sorry. Just that terminology. I'm sorry, sir. I know that you've been waiting for the trial. It's just the terminology.
>
> . . . .
>
> I'm sorry, I haven't heard that term utilized. I'm sorry. I'm sorry, sir. It's just the terminology.

After the prosecutor asked Mr. Davenport a few more questions, the judge instructed counsel to approach the bench and then instructed the bailiff to escort the jury from the courtroom, at which time the judge addressed the witness as follows:

> Sir, there is nothing funny about the allegation, and I know that this is—it is that term set me off, and I needed a moment. But there is nothing funny about the allegation. I know that this is a grave case, but that term has just stuck with me, and I needed a moment. I think the jury needed a moment as well. So give me just a moment here. All right.

A few minutes later, the bailiff brought the jury back to the courtroom, at which time the judge made the following remarks to the jury:

Okay, ladies and gentlemen, I appreciate you being back. Ladies and gentlemen, just as an aside, I've been on the bench since 1996, but I'm human just like the next person, and the terminology, one word the gentleman indicated obviously set me off for a moment. There's nothing—and I needed a moment simply to compose myself and have a moment to excuse you to the jury room, but I think we're ready to get started again. That happens rarely, but I needed a moment. . . .

In his brief, defendant recognizes that he has the burden of showing prejudice in violation of N.C.G.S. § 15A-1222. *See Blackstock*, 314 N.C. at 236, 333 S.E.2d at 248. We are not persuaded that defendant has met his burden to establish that the judge's outburst indicated an "opinion upon any issue to be decided by the jury or . . . indicate[d] in any manner his opinion as to the weight of the evidence or the credibility of any evidence properly before the jury." *See id.* Although the judge's outburst may have been illadvised and did not exemplify an undisturbed "atmosphere of judicial calm," *see Carter*, 233 N.C. at 583, 65 S.E.2d at 10, after considering the matter "in light of the factors and circumstances disclosed by the record," *see Blackstock*, 314 N.C. at 236, 333 S.E.2d at 248, we conclude that any resulting error was harmless and did not prejudice defendant so as to entitle him to a new trial.

## III.

**[3]** Finally, defendant contends the trial court erred by "further recommend[ing]" that defendant's sentence "shall not and can not [sic] be served with any other sentence." Because the court's "recommend[ation]" did not affect the judgment in this case, but instead sought to bind a later court that might seek to impose another sentence against defendant during the 133 to 169-month term of imprisonment to which defendant is now subject, we believe that the trial court exceeded its statutory authority by mandating that a later court must enter any subsequent sentence as consecutive only, rather than concurrent, if such a sentence is entered while defendant is still serving his sentence in the present case. *See, e.g.*, N.C. Gen. Stat. § 15A-1344(d) (2009) (providing that an activated sentence upon a probation revocation "runs *concurrently* with any other period of probation, parole, or imprisonment to which the defendant is subject during that period *unless the revoking judge specifies that it is to run consecutively* with the other period" (emphasis added)). Nevertheless, " '[t]he courts have no jurisdiction to determine mat-

ters purely speculative, enter anticipatory judgments, . . . deal with theoretical problems, give advisory opinions, . . . provide for contingencies which may hereafter arise, or give abstract opinions.' " *In re Wright*, 137 N.C. App. 104, 111-12, 527 S.E.2d 70, 75 (2000) (alteration and omissions in original) (quoting *Little v. Wachovia Bank & Tr. Co.*, 252 N.C. 229, 243, 113 S.E.2d 689, 700 (1960)). Here, although the record indicates that defendant was being held on a probation violation charge at the time of trial, the record does not disclose whether defendant is now subject to a sentence as a result of any proceedings arising out of the then-pending charge. Thus, if we were to vacate the portion of the judgment in the present case that seeks to impose upon later courts the restriction regarding sentencing described above, to do so would render this portion of our opinion advisory. Therefore, because this issue on appeal is " 'not a question ripe for review because it will arise, if at all, only if' " defendant is ordered to serve a consecutive sentence while still serving his sentence in the present case, *see State v. Coltrane*, 188 N.C. App. 498, 508, 656 S.E.2d 322, 329 (quoting *Simmons v. C.W. Myers Trading Post, Inc.*, 307 N.C. 122, 123, 296 S.E.2d 294, 295 (1982) (per curiam)), appeal dismissed and *disc. review denied*, 362 N.C. 476, 666 S.E.2d 760 (2008), we leave the judgment undisturbed.

No prejudicial error.

Judges ELMORE and GEER concur.