STATE OF NORTH CAROLINA v. LUIS BERBER MARTINEZ

No. COA10-885

(Filed 21 June 2011)

**1. Evidence— sexual abuse—vouching for victim's credibility**

The trial court erred in an indecent liberties and statutory rape case by admitting a DSS social workers' testimony that she substantiated the minor victim's claim of sexual abuse by defendant. There was a reasonable possibility that had the testimony not been admitted, the jury would have reached a different verdict.

**2. Discovery— privileged documents—failure to disclose material exculpatory information**

The trial court erred in an indecent liberties and statutory rape case by failing to disclose material exculpatory information contained in privileged documents reviewed in camera. On remand for a new trial, the trial court should review the material *de novo* to determine whether it should be made available to defendant.

Appeal by Defendant from Judgments entered 21 January 2010 by Judge Orlando F. Hudson, Jr., in Granville County Superior Court. Heard in the Court of Appeals 12 January 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Laura E. Crumpler, for the State.*

*Russell J. Hollers III for Defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Luis Berber Martinez ("Defendant") appeals from Judgments imposing an active sentence after a jury found him guilty of three counts of indecent liberties with a child and one count of statutory rape. Defendant argues, *inter alia,* the trial court erred in admitting the testimony of a social worker that an allegation of sexual abuse made against Defendant had been substantiated by the Department of Social Services. Defendant argues this testimony was admitted in error, was prejudicial, and he seeks a new trial. For the reasons stated below, we agree and grant Defendant a new trial.

## I. Factual & Procedural Background

The State's evidence tended to establish the following. In 2008, Nadia[1] and her sister Sara were living with their legal guardian and aunt Sharon Martinez ("Mrs. Martinez") and Defendant. Nadia testified that on 27 June 2008, when Nadia was 13 years old, she had some friends sleeping over from the night before. That morning, Mrs. Martinez woke Nadia to look after Mrs. Martinez's infant daughter while Mrs. Martinez ran an errand. Nadia testified that she was sitting in the living room watching the infant and the television when Defendant came into the room and sat beside her on the sofa. Defendant then allegedly sexually molested Nadia before being interrupted by one of Nadia's friends walking into the room. Nadia testified that Defendant grabbed his clothes and ran out of the room. Nadia's friend encouraged Nadia to tell someone what had happened; the friend, however, did not testify.

Nadia called a family friend who called the police. A social worker from the Granville County Department of Social Services ("DSS") took Nadia to the hospital where she was examined and hospital staff collected physical evidence using a rape kit. When Nadia was released from the hospital, DSS placed her and her sister in a foster home.

On 1 December 2008, a Granville County Grand Jury indicted Defendant with three counts of taking indecent liberties with a minor and one count of statutory rape. In June 2009, Judge Henry W. Hight, Jr., reviewed, *in camera*, confidential records pertaining to Nadia's allegations. In an Order entered 2 July 2009, Judge Hight concluded the confidential records did not contain material exculpatory evidence and need not be disclosed to Defendant.

In January 2010, Defendant filed motions *in limine* seeking: to exclude evidence from a then-pending DSS investigation into whether Defendant neglected one or more of his children; and to exclude testimony by the State's expert witness as to the expert's opinion of whether Nadia and Sara were sexually abused children in the absence of physical evidence of abuse. Both Motions were denied.

Defendant's case came on for trial before Judge Orlando F. Hudson in the 19 January 2010 Criminal Session of Granville County Superior Court. At trial, Nadia testified to two other incidents of alleged sexual abuse by Defendant, and stated that such abuse "happened continuously." In one incident, Nadia and Defendant were

---

1. Pseudonyms are used to protect the identity of juveniles.

cleaning his car in the garage when Defendant came up behind her, rubbed her buttocks, breasts, and vaginal area before attempting to unbutton her pants. Nadia told Defendant to stop and opened the garage door. Defendant allegedly told Nadia not to tell anyone, as she would not like the consequences. Nadia told Mrs. Martinez, who ignored her allegations.

Nadia also admitted, however, that she accused Defendant of raping her in 2006, but the accusation was false. Nadia testified that she recanted the 2006 allegation after DSS began to investigate because Mrs. Martinez and Defendant told her to do so.

The State called as a witness Cassandra Putney ("Putney"), the social worker assigned by DSS to investigate Nadia's allegations of abuse. Putney testified to her credentials, including her position with DSS, her work experience, and her educational background. In response to the State's question as to how Putney became familiar with Nadia and her sister, Putney stated, "The first time I met them was in 2006. A case and investigation was done and *substantiated* for—." (Emphasis added.) Defendant's counsel objected to any "substantiation" testimony. The trial court overruled the objection and Putney continued: "Our agency *substantiated* a case of sex abuse in regards to [Nadia]. And that was in 2006." (Emphasis added.) Defendant's counsel objected again and moved to strike the testimony. When Defendant's counsel cited case law for the proposition that substantiation testimony was not permitted, the trial judge stated he did not believe that was correct and overruled the objection. On cross-examination, Putney admitted that after Nadia confessed that her 2006 allegation was not true, DSS closed that investigation.

The State called as a witness Scott Snider ("Snider"), the Clinical Coordinator at the Duke Child Abuse and Neglect Medical Evaluation Clinic. Snider testified that he interviewed Nadia in July 2008 and that Nadia confirmed she recanted her prior allegations of sexual abuse by Defendant, because Defendant and Mrs. Martinez told her to "say that nothing happened."

The State also called Dr. Karen St. Claire to testify as to her physical examination of Nadia's genitals on 14 July 2008. Dr. St. Claire, qualified by the trial court as an expert witness on child sex abuse, concluded that Nadia's genitals looked "very typical" for an adolescent, and such non-specific findings could be consistent with repeated penile-vaginal penetration.

The jury found Defendant guilty on all charges. The trial court entered consecutive judgments imposing 399 to 491 months imprisonment. The trial court further found Defendant had been classified as a sexually violent predator and ordered Defendant, upon his release from prison, to register as a sex offender and be subject to satellite based monitoring for the remainder of his life. Defendant gave notice of appeal in open court.

## II. Jurisdiction & Standard of Review

As Defendant entered a plea of not guilty and appeals from the final judgment of a superior court, an appeal lies of right with this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2009). When the admissibility of evidence by the trial court is preserved for review by an objection, we review the trial court's decision *de novo. See State v. Capers,* —— N.C. App. ——, ——, 704 S.E.2d 39, 45 (2010), *appeal dismissed, disc. review denied,* —— N.C. ——, 707 S.E.2d 236 (2011) ("[W]e review a trial court's ruling on the relevance of evidence *de novo . . . .*").

## III. Analysis

### A. Voucher of Victim's Credibility

[1] Defendant first argues the trial court erred in admitting DSS social worker Putney's testimony that she "substantiated" Nadia's 2006 claim of sexual abuse by Defendant. Defendant contends the admission of this testimony was an error of law as it unfairly bolstered the victim's credibility. We agree.

In *State v. Giddens* this Court concluded similar testimony to be an impermissible expression of opinion as to the credibility of the accuser. 199 N.C. App. 115, 123, 681 S.E.2d 504, 509 (2009), *aff'd,* 363 N.C. 826, 689 S.E.2d 858 (2010) (per curium). At issue in *Giddens* was the testimony by a DSS investigator that he "substantiated" the victim's sexual abuse allegation after an investigation into the claim. *Id.* Because the investigator's testimony was based, in part, on the DSS investigation and not "solely on the children's accounts of what happened," the Court rejected the State's argument that the testimony was a prior consistent statement and merely corroborated the victims' testimony. *Id.* at 120-21, 681 S.E.2d at 507-08. Rather, the testimony amounted to an impermissible voucher of the victims' credibility. *Id.* at 121, 681 S.E.2d at 508 ("Our case law has long held that a witness may not vouch for the credibility of a victim." (citing *State v. Freeland,* 316 N.C. 13, 340 S.E.2d 35 (1986) and *State v. Teeter,* 85

N.C. App. 624, 355 S.E.2d 804, *appeal dismissed, cert. denied,* 320 N.C. 175, 358 S.E.2d 67 (1987))).

The *Giddens* Court concluded the investigator's testimony, that DSS "substantiated" the allegations of sexual abuse, essentially told the jury that DSS determined the defendant was guilty of sexually abusing the victims and the trial court erred in admitting the testimony. *Id.* at 121-22, 681 S.E.2d at 508 (stating the testimony "amounted to a statement that a State agency had concluded Defendant was guilty").

The State argues the present case is distinguishable. In *Giddens,* the State's witness testified to the "thorough" nature of the investigation that led DSS to conclude the victims' allegation was substantiated. *Id.* at 121, 681 S.E.2d at 508. Here, Putney did not testify to the thoroughness of the DSS investigation, but merely stated that DSS "substantiated" the claim after conducting an investigation. On this basis, the State contends it would be disingenuous to equate the present case with the facts of *Giddens.* We cannot agree.

In *Giddens,* the DSS investigator testified that her investigation included a "global assessment," in which she inquired about more than the child's specific allegations, but also inquired as to the child's mental needs and supervision. *Giddens,* 199 N.C. App. at 121, 681 S.E.2d at 508. Based on this information, the DSS investigator stated she had no information to substantiate that the child's *other caregivers* were abusive or neglectful. *Id.* We cannot conclude the testimony in the present case, that DSS substantiated Nadia's sexual abuse allegations, is any less prejudicial than the testimony in *Giddens.* As we explained in *Giddens,* although the social worker was not qualified as an expert witness, the jury likely gave the witness' opinion more weight than the opinion of a lay person. *Id.* The trial court erred in admitting Putney's substantiation testimony.

We also note the striking similarity of the evidence in *Giddens* and the present case. Here, as in *Giddens,* there was no physical evidence of sexual abuse. *See id.* at 119-20, 681 S.E.2d at 507 (noting physical exams of the children were normal and revealed no injures). The State's expert medical witness, Dr. St. Claire, testified to Nadia's non-specific genital exam results—she "looked like a very typical adolescent." Thus, the State's case rested solely on Nadia's testimony and additional corroborative testimony. In effect, the essential issue for the jury to consider was Nadia's credibility. *See id.* at 119-20, 681 S.E.2d at 507 (noting that without the improper testimony by the DSS

investigator, the jury was left with the children's testimony and other corroborating testimony, leaving the credibility of the victims as the central issue for the jury to resolve).

Accordingly, we conclude there is a reasonable possibility that had Putney's testimony not been admitted, the jury would have reached a different verdict. N.C. Gen. Stat. § 15A-1443(a) (2009) ("A defendant is prejudiced by errors . . . when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises.").

Furthermore, the *Giddens* defendant failed to object to the substantiation testimony at trial and, yet, the Court found it to be sufficiently prejudicial to rise to the level of plain error. *See Giddens*, 199 N.C. App. at 123-24, 681 S.E.2d at 509 (ordering a new trial after concluding that while the victims' testimony and corroborating testimony is strong evidence, it is not sufficient to survive a plain error review of the impermissible testimony of a witness vouching for the credibility of the victim). Unlike the defendant in *Giddens*, here, Defendant preserved the issue for review by objecting to Putney's testimony. Given the lower threshold required for finding prejudicial error when the issue is preserved for review by objection, we conclude Putney's testimony was sufficiently prejudicial to warrant a new trial.

### B. Confidential Evidence

[2] Defendant also argues the trial court erred in failing to disclose material exculpatory information contained in privileged documents reviewed in camera. After a review of this evidence, we agree.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963).

The record does not reveal what, if any, of this confidential material was made available to Defendant. Our review of the material, however, leads us to conclude there is sufficient exculpatory material to impeach the State's witnesses. On remand for a new trial, we direct the trial judge to review the material *de novo* to determine, in his or her discretion, what material should be made available to Defendant.

## IV. Conclusion

In summary, we conclude the trial court erred by permitting the DSS investigator to testify that she had substantiated the allegation of sexual abuse against Defendant. We also conclude the trial court erred in failing to disclose material exculpatory evidence to Defendant. Defendant is entitled to a new trial. Consequently, we do not reach Defendant's additional arguments regarding the trial court's refusal to instruct on attempted rape, sentencing Defendant as a level III sex offender, and ordering Defendant be subject to satellite-based monitoring for the remainder of his life.

New trial.

Judges CALABRIA and STROUD concur.