IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-653

Filed: 5 May 2020

Washington County, No. OCA 2017-08-0026

IN RE: WASHINGTON COUNTY SHERIFF'S OFFICE

Appeal by petitioner-appellant from orders entered 20 February and 1 March 2018 by Judge Wayland J. Sermons, Jr. in Washington County Superior Court. Heard in the Court of Appeals 28 March 2019.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Jason P. Caccamo, for the State.*
>
> *J. Michael McGuinness for petitioner-appellant.*
>
> *Megan Milliken for The Southern States Police Benevolent Association and The North Carolina Police Benevolent Association, amicus curiae.*

MURPHY, Judge.

The District Attorney of Washington County ("the State") filed an Ex Parte Motion for In Camera Review in the Superior Court of Washington County "to determine whether or not [a criminal investigative file] contain[ed] potentially exculpatory information" involving Appellant "that the State would be required to disclose . . . in cases [in which] the State intends to call [Appellant] as a witness." The State's motion was not filed in correlation with any ongoing trial or criminal prosecution, but for the purpose of determining whether the investigative file in

question contained information the State would be required to disclose to potential criminal defendants in the future. The judge reviewed the file and ordered the District Attorney's Office to, "in any criminal matter wherein the State of North Carolina intends to call [Appellant] as a witness, disclose to the defendant and/or defendant's counsel the contents of" the investigative file.

On appeal, Appellant argues the judge erred in issuing the 20 February and 1 March 2018 *ex parte* orders because he was not provided notice and an opportunity to be heard. Appellant further contends that the judge erred in issuing the 1 March 2018 order because the judge (1) lacked subject matter jurisdiction to act on the State's *ex parte* motion for *in camera* review, (2) violated his procedural due process rights under the United States and North Carolina Constitutions, and (3) violated his rights to liberty and to enjoy the fruits of his labor under the North Carolina Constitution. The judge exceeded the limits of its jurisdiction by entering an advisory opinion, which is hereby vacated.

## **BACKGROUND**

Washington County Sheriff's Office criminal investigative file OCA #2017-08-0026 concerned an investigation conducted in part by Appellant, a North Carolina law enforcement officer. The State filed an *Ex Parte Motion for In Camera Review of Investigative Report and for Protective Order*.

Appellant was identified in the State's motion as "a potential witness in criminal cases." The State further alleged that Appellant "may have mislead [*sic*] and deceived a superior officer[,] . . . [and] may have not been truthful and honest in the preparation of the investigative report related to his actions that may have mislead [*sic*] and deceived a superior officer." Additionally, the State alleged that it had "a sufficient basis to believe that potential impeachment or exculpatory evidence exists within OCA #2017-08-0026."[1]

The judge ordered the District Attorney's Office, consistent with the request contained in the motion, to submit copies of the criminal investigative file to the judge "to determine whether or not it contain[ed] potentially exculpatory information that the State would be required to disclose" in future cases. The file contained documented inconsistencies in Appellant's reports relating to the criminal investigation and his description of events to his superiors.

On 1 March 2018, following the *in camera* review, the judge entered an order with the following findings of fact:

---

[1] The State's motion references OCA #2017-08-0026 as an investigative file, but then alleges that the file is a personnel record and an internal affairs file. The judge's order makes the same statement. However, Appellant did not allege in any motion filed in the lower court that the file was a personnel record, nor does he argue on appeal that the criminal investigative file at issue is a personnel record that is subject to disclosure only pursuant to the terms of N.C.G.S. § 153A-98. In fact, in his brief, Appellant acknowledges that the records at issue are "investigative records involving [Appellant]." Moreover, there is no indication the file is an internal affairs file.

We note that an OCA number typically refers to the unique number assigned to criminal investigations by law enforcement agencies, and the file contained in the Record, Washington County Sheriff's Office OCA #2017-08-0026, concerned the investigation of a home invasion and shooting. Thus, we refer to the file as a criminal investigative file.

> 2. That [Appellant] was an investigatin[g] officer in Washington County Sheriff's Office OCA #2017-08-0026[.]
>
> . . .
>
> 5. The State has an affirmative ethical and constitutional obligation to disclose evidence favorable to a criminal defendant. . . . Counsel for the State is responsible for a failure to disclose exculpatory information in the possession of the police department, knowledge of which is imputed to the prosecutor.

The judge concluded as a matter of law that the information contained in the investigative file "contain[ed] potentially exculpatory information that the State would be required to disclose under *Brady*, *Giglio*[,] and/or *Laurie*, in cases involving [Appellant] as a witness." The judge also concluded as a matter of law that

> 8. The public policy concerns, and those of [Appellant], in protecting the confidentiality of this file is outweighed by the rights of criminal defendants in cases where [Appellant] is or may be a witness in accordance with *Brady*, *Giglio*[,] and *Laurie* material.
>
> 9. [T]here is a sufficient basis to believe that potential impeachment or exculpatory evidence exists within Washington County Sheriff's Office OCA #2017-08-0026[.]"

The judge ordered the State to "disclose to the defendant and/or defendant's counsel the contents" of the criminal investigative file "in any criminal matter" in which the State intends to call [Appellant] as a witness. The ordered disclosure was to be made "in compliance with the State's Constitutional responsibility to disclose potentially exculpatory information."

- 4 -

Per the terms of the order, the State notified Appellant of the order by a letter dated 1 March 2018. On 28 March 2018, Appellant noticed his appeal from the judge's 20 February and 1 March 2018 orders. Appellant also filed a motion requesting the production of documents considered by the judge in issuing said orders. The judge granted Appellant's motion "on the express condition that such documents shall remain confidential between [Appellant] and his counsel." However, the judge authorized Appellant to "use [the] disclosed records in connection with any litigation arising out of the disclosure of [the] records," including the appeal now before us.

## ANALYSIS

In the context of *Brady* and *Giglio* disclosures, trial courts have the authority to require the government to disclose exculpatory and/or impeachment evidence. *State v. Martinez*, 212 N.C. App. 661, 666, 711 S.E.2d 787, 790-91 (2011); *see also State v. Lynn*, 157 N.C. App. 217, 224, 578 S.E.2d 628, 633 (2003). However, this matter is not a situation where the judge has issued an order requiring disclosure of exculpatory or impeachment evidence in a criminal matter over which the court is *presently* presiding. Instead, the judge's order here attempts to require disclosure "in any criminal matter wherein the State of North Carolina intends to call [Appellant] as a witness" in the future. There is a fine line between declaratory judgments, which trial courts have the statutory authority to enter, and advisory opinions, which go beyond a trial court's judicial authority. *See, e.g., Lide v. Mears*, 231 N.C. 111, 117,

56 S.E.2d 404, 409 (1949) ("The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice."); *Town of Tryon v. Duke Power Co.*, 222 N.C. 200, 204, 22 S.E.2d 450, 453 (1942) (noting that it is not the function of the courts "to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise"). Here, the judge's order is purely advisory and therefore an improper exercise of its power. *Duke Power Co.*, 222 at 204, 22 S.E.2d at 453 (*citing Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 324, 80 L. Ed. 688, 699 (1936).

The judge's order in this matter is an anticipatory judgment providing for the contingency that Appellant is to be called as a witness by the State in a future criminal case. The judge's order requires the State to, "in any criminal matter wherein the State of North Carolina intends to call [Appellant] as a witness, disclose to the defendant and/or defendant's counsel the contents of Washington County Sheriff's Office OCA #2017-08-0026 . . . in compliance with the State's Constitutional responsibility to disclose potentially exculpatory information." Such an order is purely speculative and amounts to, using the language of our Supreme Court, "a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise." *Duke Power Co.*, 222 N.C. at 204, 22 S.E.2d at 453. Such an order exceeds the scope of the judge's power and must be vacated.

The advisory nature of the judge's order in this case is especially evident when we consider the alternative scenario in which it ruled the State is *not* required to disclose information contained in the investigative report in future cases. Would such a holding bind trial courts or District Attorneys from making independent *Brady* or *Giglio* determinations? Would future defendants be deprived of the opportunity to argue the exculpatory or impeachment value of the report? These questions are undoubtedly answered in the negative because in every criminal case, the prosecutor retains an "affirmative duty to disclose evidence favorable to a defendant[.]" *Kyles v. Whitley*, 514 U.S. 419, 432, 131 L. Ed. 2d 490, 505 (1995).

"The courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, . . . deal with theoretical problems, give advisory opinions, . . . , provide for contingencies which may hereafter arise, or give abstract opinions." *Little v. Wachovia Bank & Tr. Co.*, 252 N.C. 229, 243, 113 S.E.2d 689, 700 (1960); *see also Wise v. Harrington Grove Cmty. Ass'n, Inc.*, 357 N.C. 396, 408, 584 S.E.2d 731, 740 (2003) (holding that deciding an issue not "drawn into focus by [the court] proceedings" would "render an unnecessary advisory opinion"); *In re Davis' Custody*, 248 N.C. 423, 426, 103 S.E.2d 503, 505 (1958) (holding that a trial court "rendered an advisory opinion that [a father] shall not be bound by any order of the Domestic Relations Court . . . [regarding custody of two minors] . . . from this date forward") (internal quotation marks omitted); *State v. Herrin*, 213 N.C. App. 68, 75,

711 S.E.2d 802, 808 (2011) (holding that a sentencing matter was not ripe for appellate review because it would arise, if at all, only if defendant was ordered by a future court to serve a consecutive sentence); *In re Wright*, 137 N.C. App. 104, 112, 527 S.E.2d 70, 75 (2000) (holding that the question of whether a punishment was cruel and unusual was not "ripe for review" because the defendant had "been neither tried nor convicted of any crime"). Here, the trial court's order amounts to an improper advisory opinion, which must be vacated.

## **CONCLUSION**

Every defendant enjoys the right to evidence in the hands of the State which may have exculpatory or impeachment value. However, here, there is no actual controversy, as there are no actual defendants on the other side. Rather, the judge's order is an advisory opinion regarding the State's obligation towards purely hypothetical future defendants. The issuance of the order was not a proper exercise of its judicial power.

VACATED.

Judge DILLON concurs.

Judge BERGER dissents with a separate opinion.

BERGER, Judge, dissent in separate opinion.

I respectfully dissent.

First, it must be noted that petitioner seeks relief through a process which currently is not established in our law. Petitioner certainly advances reasonable concerns about the potential harm that could occur for law enforcement officers wrongly identified as having been untruthful. However, petitioner's concerns, and the procedure he seeks to implement, are better vetted and established by the legislature.

As Justice Scalia noted, "the court makes an amazing amount of decisions that ought to be made by the people." Judges are low-information decision makers. *See Dep't of Homeland Sec. v. New York*, 589 U.S. ___, ___ (2020) (Gorsuch, J., concurring). We are at all times limited to the parties before us, the information they provide, and the particular facts of their case. Before us in this case, we have a law enforcement officer from Washington County, in what is essentially an *in rem* proceeding. Petitioner seeks to establish a procedure that would impact prosecutors, police chiefs, sheriffs, and judges across the State of North Carolina. Petitioner wants the benefits of a new procedure with no input from public servants whose job it is to protect the public, protect constitutional rights, and seek justice.

"[R]ecognition of a new cause of action is a policy decision which falls within the province of the legislature." *Curl v. Am. Multimedia, Inc.,* 187 N.C. App. 649, 656, 654 S.E.2d 76, 81 (2007) (quoting *Ipock v. Gilmore*, 85 N.C. App. 70, 73, 354

S.E.2d 315, 317 (1987)).  Thus, these concerns should be addressed to the one hundred seventy men and women in our legislature.  The people, through their elected representatives from across this state, would scrutinize information, arguments, and positions from all affected groups.  In the long run, law enforcement officers may obtain a clear and certain process to not only establish a property right but to protect the same.  If we do not stay in our separation-of-powers lane, we run the risk of creating, on the one extreme, a system that does not adequately protect petitioner's concerns, and at the other, creating unworkable standards and procedures which lead to even more litigation.

To the merits of this matter, the majority concludes that the trial court did not have jurisdiction to issue the requested order.  For the reasons stated below, I dissent from the majority opinion.

A prosecutor

> is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.  As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer.

*Berger v. United States*, 295 U.S. 78, 88 (1935).  "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate; the prosecutor's duty is to seek justice."  N.C. Rules of Prof'l Conduct r. 3.8, cmt. 1 (2017).

North Carolina's District Attorneys are responsible for, *inter alia,* "the prosecution on behalf of the State of all criminal actions in" his or her prosecutorial district. N.C. CONST. art. IV, § 18(1); *see also* N.C. Gen. Stat. § 7A-61 (2019). "The district attorney's performance of his duties . . . is tempered by his obligation to the defendant to assure that he is afforded his right to a fair trial." *State v. Barfield*, 298 N.C. 306, 331, 259 S.E.2d 510, 531 (1979).

The United States Supreme Court has acknowledged that criminal defendants have "what might loosely be called . . . constitutionally guaranteed access to evidence." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982). In *Brady v. Maryland,* the United States Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland,* 373 U.S. 83, 87 (1963). "The *Brady* rule is based on the requirement of due process. Its purpose is . . . to ensure that a miscarriage of justice does not occur." *United States v. Bagley*, 473 U.S. 667, 675 (1985) (footnote omitted).

In *Giglio v. United States,* the United States Supreme Court expanded *Brady* to require disclosure of evidence that could be used to impeach the credibility of a State's witness "[w]hen the reliability of [the] witness may well be determinative of guilt or innocence." *Giglio v. United States,* 405 U.S. 150, 154 (1972) (citation and quotation marks omitted). Further, "suppression of material evidence justifies a new

3

trial irrespective of the good faith or bad faith of the prosecution." *Id*. at 153 (citation and quotation marks omitted).

In addition, prosecutors in the State of North Carolina are required to "make timely disclosure to the defense of all evidence or information . . . that tends to negate the guilt of the accused or mitigates the offense" without regard to materiality. N.C. Rules of Prof'l Conduct r. 3.8(d), r. 3.8 cmt. 4 (2017).

Evidence that a witness has been untruthful may be useful to a defendant, not only in calling into question the credibility of that witness, but also to attack "the reliability of [an] investigation." *Kyles v. Whitley,* 514 U.S. 419, 447 (1995). Thus, even without the issuance of the *Giglio* order by the trial court, pursuant to *Brady* and Rule 3.8(d) of the North Carolina Rules of Professional Conduct, the State would have a duty to disclose the criminal investigative file at issue here to any future defendant in any future case in which petitioner would testify.

In this case, the criminal investigative file in question contained evidence suggesting that petitioner "may have mislead (*sic*) and deceived a superior officer in the performance of his duties" and "may have not been truthful and honest in the preparation of the investigative report related to his actions that may have mislead (*sic*) and deceived a superior officer" such that the State had "a sufficient basis to believe that potential impeachment or exculpatory evidence" existed within the file. Disclosure of this evidence would be required for every criminal defendant in a case

where petitioner was a potential witness. This is not speculative or anticipatory; it is basic criminal procedure. In fact, petitioner has not argued that the information contained in the criminal investigative file would not be subject to disclosure under *Brady* or *Giglio*, or the Rules of Professional Conduct.

The question of "[w]hether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (citation omitted). "[A]n order of a court is void where the court's [subject matter] jurisdiction was never properly invoked." *State v. Santifort*, 257 N.C. App. 211, 219, 809 S.E.2d 213, 219 (2017).

"Subject matter jurisdiction is conferred upon the courts by either the North Carolina Constitution or by statute." *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987). Our General Assembly, "within constitutional limitations, can fix and circumscribe the jurisdiction of the courts of this State." *Bullington v. Angel*, 220 N.C. 18, 20, 16 S.E.2d 411, 412 (1941). "Where jurisdiction is statutory and the Legislature requires the Court to exercise its jurisdiction in a certain manner, to follow a certain procedure, or otherwise subjects the Court to certain limitations, an act of the Court beyond these limits is in excess of its jurisdiction." *Eudy v. Eudy*, 288 N.C. 71, 75, 215 S.E.2d 782, 785 (1975). Where jurisdiction is statutory and our legislature *has not* prescribed a certain manner, procedure, or limitation, the court is required to "utilize its inherent power and implement and follow procedures which

effectively and practically . . . effectuate the intent of [the statute.]" *Santifort,* 257 N.C. App. at 221, 809 S.E.2d at 220-21; *see also State v. Hardy*, 293 N.C. 105, 124, 235 S.E.2d 828, 840 (1977) (explaining that the trial court is "not necessarily preclude[d] . . . from ordering discovery in his discretion.").

"Disclosure of records of criminal investigations . . . that have been transmitted to a district attorney or other attorney authorized to prosecute a violation of law shall be governed by [Section 132-1.4] and Chapter 15A of the General Statutes." N.C. Gen. Stat. § 132-1.4(g) (2019). "Records of criminal investigations conducted by public law enforcement agencies . . . may be released by order of a court of competent jurisdiction." N.C. Gen. Stat. § 132-1.4(a).

Pursuant to Section 132-1.4(b)(1),

> "Records of criminal investigations" means all records or any information that pertains to a person or group of persons that is compiled by public law enforcement agencies for the purpose of attempting to prevent or solve violations of the law, including information derived from witnesses, laboratory tests, surveillance, investigators, confidential informants, photographs, and measurements. The term also includes any records, worksheets, reports, or analyses prepared or conducted by the North Carolina State Crime Laboratory at the request of any public law enforcement agency in connection with a criminal investigation.

N.C. Gen. Stat. § 132-1.4(b)(1).

Section 132-1.4 does not provide a precise procedure for a trial court's authorization to release records of criminal investigations. Thus, the trial court must

"utilize its inherent power and implement and follow procedures which effectively and practically effectuate the intent of [the statute]" if it is to order the release of records of criminal investigations. *In re Brooks*, 143 N.C. App. 601, 611, 548 S.E.2d 748, 755 (2001) (*purgandum*).

This Court has not specifically ruled on whether, and by what process, a trial court may properly review law enforcement investigation files *in camera* pursuant to an *ex parte* motion of a prosecutor to determine whether the content of the files requires disclosure under *Brady*, *Giglio,* or the Rules of Professional Conduct. However, our opinions in *In re Albemarle Mental Health Center,* 42 N.C. App. 292, 256 S.E.2d 818 (1979) and *In re Brooks* are instructive.[2]

In *Albemarle Mental Health* and *Brooks*, this Court determined whether the superior court had jurisdiction to issue *ex parte* orders for disclosure of certain records or information after *in camera* review where the General Statutes provided for

---

[2] In *Santifort*, this Court deviated from its earlier holdings in *Albemarle Mental Health* and *Brooks* that a district attorney's failure to follow the Rules of Civil Procedure to initiate a special proceeding need not preclude the superior court's jurisdiction. *Santifort*, 257 N.C. App. at 222, 809 S.E.2d at 221. While the *Santifort* court noted that the State's *ex parte* motions should have been treated as initiating a special proceeding, it nonetheless held that "the State never took the steps necessary to invoke the superior court's jurisdiction" where a "special proceeding was not officially initiated nor docketed." *Id.* at 216, 222, 809 S.E.2d at 218, 221.

We note that "our Supreme Court has instructed this Court, 'where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.' *In re Civil Penalty,* 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). [*Santifort*] created a direct conflict in this area of the law by deviating from precedent." *In re I.W.P.*, 259 N.C. App. 254, 263, 815 S.E.2d 696, 704 (2018). "[W]here there is a conflicting line of cases, a panel of this Court should follow the older of those two lines." *Id.* at 263, 815 S.E.2d at 704 (quoting *Respess v. Respess*, 232 N.C. App 611, 625, 754 SE.2d 691 701 (2014)). Accordingly, *Albemarle Mental Health* and *Brooks* should control.

judicial disclosure but did not "provide precise statutory directions for fulfilling this responsibility." *Albemarle Mental Health,* 42 N.C. App. at 296, 256 S.E.2d at 821. In those cases, this Court considered (1) whether the superior court's jurisdiction had been properly invoked under applicable statute, and (2) whether the process used to obtain the *ex parte* orders was in keeping with the intent of the statute.

In *Albemarle Mental Health,* a District Attorney learned that an employee at the Albemarle Mental Health Center had obtained information about an alleged murder from an unnamed patient. The District Attorney requested that the clinic's director provide the information either to him or to an agent at the State Bureau of Investigation. *Id.* at 293, 256 S.E.2d at 819. The clinic's director declined to provide the information citing physician/patient privilege under N.C. Gen. Stat. § 8-53, or psychologist/client privilege under N.C. Gen. Stat. § 8-53.3. *Id.* at 298, 256 S.E.2d at 822.

"The District Attorney, sensitive to his responsibility to enforce the criminal law in his district," *Id.* at 300, 256 S.E.2d at 823, then filed a motion in the superior court, pursuant to N.C. Gen. Stat. § 8-53.3, requesting an *in camera* hearing "to determine: (1) whether [the requested] information . . . constituted privileged information; (2) whether such information was relevant to an alleged homicide . . . , and; (3) whether disclosure of such information to law enforcement officers was necessary to a proper administration of justice." *Id.* at 293, 256 S.E.2d at 819. The

District Attorney asked that the superior court "issue an order . . . compelling disclosure of the information *if the court determined* that the information was relevant to criminal acts and that its disclosure was necessary to provide for the proper administration of justice." *Id.* at 293-94, 256 S.E.2d at 819-20 (emphasis added).

The superior court ordered the clinic director and employees to appear, but concluded that it did not have jurisdiction "to proceed and to determine the merits, rights and duties of the parties" because "[n]o criminal proceeding ha[d] been instituted," and "[n]o subpoena or other lawful process of the Court had been issued in any judicial proceeding giving the Court jurisdiction over the . . . [c]enter." *Id.* at 294-95, 256 S.E.2d at 818.

On appeal, the State argued that the "cause [was] in the nature of a special proceeding." *Id.* at 295, 256 S.E.2d at 820.

> G.S. 1-2 provides that "An action is an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment or prevention of a public offense." G.S. 1-3 provides that "Every other remedy is a special proceeding." Moreover, G.S. 1-394 provides in part that "Special proceedings against *adverse parties* shall be commenced as is prescribed for civil actions." . . . [P]ursuant to G.S. 1A-1, Rule 3 . . . a civil action may be commenced only by the filing of a complaint or by the issuance of a summons with permission of the court to file complaint within twenty days.

*Id.* at 295-96, 256 S.E.2d at 820-21 (emphasis added). The respondent argued that because the special proceeding was not commenced pursuant to the Rules of Civil Procedure, the superior court did not have jurisdiction. *Id.* at 295, 256 S.E.2d at 820.

This Court noted that while the proceeding was "[c]learly . . . not commenced pursuant to our statutory requirements for initiating a civil action . . . our law is [not] so inflexible as to preclude the superior court's jurisdiction in a matter of such moment." *Id.* at 296, 256 S.E.2d at 821. This Court further stated that

> [t]he superior court is the proper trial division for [a special] proceeding of this nature. *See* G.S. 7A-246. The judicial power of the superior court is that which is granted by the Constitution and laws of the State. *Baker v. Varser*, 239 N.C. 180, 79 S.E. 2d 757 (1954). Within the guidelines of our Constitution, the legislature is charged with the responsibility of providing the necessary procedures for the proper commencement of a matter before the courts. Occasionally, however, the proscribed (*sic*) procedures of a statutory scheme fail to embrace the unanticipated and extraordinary proceeding such as that disclosed by the record before us. In similar situations, it has been long held that courts have the inherent power to assume jurisdiction and issue necessary process in order to fulfill their assigned mission of administering justice efficiently and promptly.

*Id.* at 296, 256 S.E.2d at 821. Where "[o]ur legislature plainly intended that the implementation of [statutory] provisos . . . be a function of the judiciary[,]" but failed to "provide precise statutory directions for fulfilling this responsibility, it becomes incumbent upon the courts to proceed in a manner consistent with law." *Id.* at 296, 256 S.E.2d at 821.

Under the above facts, this Court determined that the superior court in *Albemarle Mental Health* had "proceed[ed] in a manner consistent with" the statutory proviso that "the presiding judge of a superior court may compel [ ] disclosure, if in his opinion the same is necessary to a proper administration of justice." *Id.* at 296-97, 256 S.E.2d at 821-22 (citation and quotation marks omitted).

In *Brooks*, the Orange County District Attorney filed *ex parte* petitions seeking the release of the personnel and internal affairs files of two police officers. The petitions included factual allegations related to an assault allegedly committed by the officers, as well as a statement by the District Attorney that the files were "necessary to a full and complete investigation . . . and [release of the files] would be in the best interest of the administration of justice." *Brooks*, 143 N.C. App. at 602, 548 S.E.2d at 750. The petitions "were not supported by affidavits, [and did not] reference any legal authority allowing [the District Attorney] to seek the release." *Id.* at 602, 548 S.E.2d at 750. The superior court granted the District Attorney's requests and ordered the release of the personnel and internal affairs records. The officers appealed, arguing, *inter alia*, that the superior court had neither jurisdiction, nor the authority to order the disclosure of the records. *Id.* at 606, 548 S.E.2d at 752. The State argued that "the [s]uperior [c]ourt retained the authority to grant [the District Attorney's] request pursuant to North Carolina General Statutes section 160A-168." *Id.* at 606, 548 N.C. App. at 752. According to the officers, because the applicable

statute "provide[d] no statutory basis to initiate such a release of documents on an *ex parte* basis," it does not authorize the release of their personnel files. *Id.* at 606, 548 N.C. App. at 752 (quotation marks omitted).

This Court concluded that where a statute authorizes the disclosure of "personnel files by order of a court of competent jurisdiction," but does not "specify the exact procedure required to obtain such an order, or whether such an order could be sought without first filing a civil or criminal action." *Id.* at 608-09, 548 S.E.2d at 753.

> [T]here is nothing inherent in the wording of [the statute] that would *prohibit* the court in the proper administration of justice from requiring disclosure . . . the [s]uperior [c]ourt [is] required to exercise its inherent or implied power for the proper administration of justice and fashion an order allowing for the disclosure of the records pursuant to [the statute].

*Id.* at 608-09, 548 S.E.2d at 753 (quotation marks omitted). Furthermore, this Court reasoned that the proceeding before the superior court was a special proceeding because "it was not an action in an ordinary proceeding in a court of justice." *Id.* at 609, 548 S.E.2d at 754 (*purgandum*). "[T]he [s]uperior [c]ourt is the proper division . . . for the hearing and trial of all special proceedings." *Id.* at 609, 548 S.E.2d at 754. (citation and quotation marks omitted). Therefore, the District Attorney's failure to "comply with the Rules of Civil Procedure . . . was not fatal." *Id.* at 609, 548 S.E.2d at 754.

This Court ultimately held that the superior court erred in ordering the release of the police officer's personnel files. We found the superior court had failed to "implement and follow procedures which 'effectively and practically . . . effectuate[d] the intent of [Section 160A-168],' that an officer's files remain confidential. . . ." where "[t]he petitions were unsworn, not accompanied by any affidavits or other similar evidence, and amounted to nothing more than [the District Attorney's] own opinion— that the disclosure of the officers' files was 'in the best interest of the administration of justice.' " *Id.* at 611, 548 S.E.2d at 755 (citation omitted).

Similar to *Albemarle Mental Health* and *Brooks,* the prosecutor here filed the State's *Ex Parte* Motion for *In Camera* Review of Investigative Report and for Protective Order (State's *Ex Parte* Motion) in recognition of an underlying duty—in those cases, to investigate and prosecute an alleged crime, here, to disclose information pursuant to *Brady*, *Giglio*, and the Rules of Professional Conduct.

In this case, the criminal investigative file consists of investigation report forms, victim and witness statements, supplementary investigation reports, suspect interview notes, arrest warrants, arrest reports, release orders, DNA collection forms, fingerprint cards, suspect photos, and lineup related materials "that [were] compiled by [the Washington County Sheriff's Office] for the purpose of" solving a home invasion and alleged assault with a deadly weapon. N.G. Gen Stat. § 132-1.4(b)(1). Under the plain language of Section 132-1.4, these records are law enforcement

"[r]ecords of criminal investigations" subject to disclosure "by order of a court of competent jurisdiction." N.C. Gen. Stat. § 132-1.4(a).

> However, the legislature failed to specify the exact procedure required to obtain such an order, or whether such an order could be sought without first filing a civil or criminal action. As in the case of [*Albemarle*] *Mental Health* [], the legislature's failure to provide for the proper procedure did not negate the Superior Court's authority, granted by [Section 132-1.4], to order the disclosure of the [law enforcement investigation files]. For there is "nothing inherent in the wording of [Section 132-1.4] that would *prohibit* the court in the proper administration of justice from requiring disclosure prior to the initiation of criminal charges or the commencement of a civil action." [*Albemarle] Mental Health Center*, 42 N.C. App. at 297, 256 S.E.2d at 822. As such, this is one of those "extraordinary proceedings" in which the Superior Court was required to exercise "its inherent or implied power for the proper administration of justice" and fashion an order allowing for the disclosure of the records pursuant to [Section 132-1.4]. *Id.* at 296, 256 S.E.2d at 821.
>
> Like the proceeding[s] in [*Albemarle*] *Mental Health* [] [and *Brooks,*] the proceeding in the present case was a "special proceeding," in that it was not "an action [] in an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment or prevention of a public offense." N.C. Gen. Stat. § 1-2 (1999); *see also* N.C. Gen. Stat. § 1-3 (1999) (stating that actions not defined in section 1-2 are "special proceedings"). Unlike the statute discussed in [*Albemarle*] *Mental Health* [], the statute at issue in the present appeal does not specify which division of court is authorized to issue the order allowing disclosure. However, our General Statutes mandate that the Superior Court "is the proper division, without regard to amount in controversy, for the hearing and trial of all special proceedings." N.C. Gen. Stat. § 7A-

14

> 246 (1999). Although [the district attorney] did not comply with the Rules of Civil Procedure, *see* N.C. Gen. Stat. § 1-393 (1999) (stating that Rules of Civil Procedure apply to special proceedings), like the DA's actions in [*Albemarle*] *Mental Health* [], such failure was not fatal to his [motion].

*Brooks*, 143 N.C. App. at 608-09, 548 S.E.2d at 753-54.

In both *Albemarle Mental Health* and *Brooks*, this Court held that the superior court had "jurisdiction to proceed and to determine the merits, rights and duties of the parties," in a special proceeding that was "not commenced pursuant to our statutory requirements for initiating a civil action." *Albemarle Mental Health,* 42 N.C. App. at 295-96, 256 S.E.2d at 820-21; *see also Brooks*, 143 N.C. App. at 609, 548 S.E.2d at 754 ("Although [the District Attorney] did not comply with the Rules of Civil Procedure, . . . such failure was not fatal to [his] petitions.").

Here, Section 132-1.4 provides that a court of competent jurisdiction may order the release of certain records. N.C. Gen Stat. § 132-1.4. However, Section 132-1.4 does not grant any individual a property or privacy interest in the content of criminal investigative files, or procedural safeguards surrounding disclosure of the information contained therein.

In addition, the underlying purpose of seeking the superior court's *ex parte* review and ultimate disclosure should be a relevant consideration. In *Brooks,* the evidence was necessary to allow the trial court to "make an independent determination as to whether the interests of justice require[d] disclosure of the confidential employment information." *Brooks*, 143 N.C. App. at 612, 548 S.E.2d at

15

755. Such is the case here. The prosecutor was seeking an independent judicial determination as to whether or not the criminal investigative file contained *Brady*/*Giglio* information subject to disclosure. As noted above, all defendants have a constitutional right to exculpatory and impeachment evidence. Here, the disclosure of the evidence at issue is necessary to accomplish that constitutional requirement and to serve the ends of justice for all criminal cases in which petitioner may be called to testify.

However, unlike in *Brooks,* the prosecutor in this case neither encouraged nor discouraged disclosure of the criminal investigative file. Rather, as in *Albemarle Mental Health,* the prosecutor requested that the court conduct an independent review of the criminal investigative file to determine whether it should be disclosed under *Brady* and *Giglio.* Contrary to petitioner's argument, there was no additional or different information necessary to allow the trial court to make an independent judgment on disclosure of the criminal investigative file. The only question was whether the evidence contained in the file could implicate *Brady* or *Giglio* concerns.

The purpose of Section 132-1.4 is to limit access to criminal investigative files. There are relatively few protections or procedural guarantees available to any individual that provides or obtains information in a criminal investigation. The overarching concern is protecting the constitutional rights of criminal defendants. The *ex*

16

*parte* motion here sought to do just that: protect the rights of future criminal defendants by complying with legal and ethical requirements.

Here, the trial court proceeded within the intent of Section 132-1.4 to limit access to the file to appropriate parties and situations. The District Attorney's Office had a constitutional duty and ethical obligation to release the contents of this particular criminal investigative file. The trial court acted pursuant to statutory authority under Section 132-1.4 and followed a procedure consistent with the intent of that statute.

However, while the trial court had authority to order the release of the criminal investigative files subject to its *Giglio* order, this Court is without jurisdiction to reach the merits of petitioner's claims. "Any party entitled by law to appeal from a judgment or order of a superior or district court rendered in a civil action or special proceeding may take appeal by filing notice of appeal with the clerk of superior court." N.C. Gen. Stat. § 1A-1, Rule 3 (2019).

To appeal from a trial court to this Court, one must be an aggrieved party to the proceeding from which he or she wishes to appeal. N.C. Gen. Stat. § 1-271 (2019); *see also Duke Power Co. v. Salisbury Zoning Bd. of Adj.*, 20 N.C. App. 730, 731-32, 202 S.E.2d 607, 608 (1974). Petitioner was not a party to the special proceeding, which was initiated by the State's *ex parte* motion. In addition, as touched on above, petitioner has no recognized personal, privacy, or property interest in the contents of

the criminal investigative file. While one certainly understands petitioner's preference that the file not be released pursuant to *Brady* and *Giglio,* the petitioner was not a party to the proceeding within the meaning of our Appellate Rules. Thus, we should "dismiss the appeal for want of jurisdiction." *Langley v. Gore*, 242 N.C. 302, 303, 87 S.E. 2d 519, 520 (1955).